IN THE MATTER OF THE SHOE MANUFACTURERS PRO-
TECTIVE ASSOCIATION, INC.

Suffolk. May 20, 1936. — September 9, 1936.

Present: PIERCE, DONAHUE, LUMMUS, & QUA, JJ.

*Attorney at Law. Corporation, Practice of law.*

The practice of an incorporated collection agency, through lay agents
and attorneys selected by it, of directing and managing the enforce-
ment of legal claims and the establishment of the legal rights of its
customers and others, where it was necessary to form and to act upon
opinions as to what those rights were and as to the legal methods
which must be adopted to enforce them; of giving or furnishing legal
advice as to such rights and methods; and, as an occupation, of
drafting documents by which such rights were created, modified, sur-
rendered or secured, constituted the practice of law in violation of
§ 46 of G. L. (Ter. Ed.) c. 221 as amended by St. 1935, c. 346, § 1.

PETITION by the Attorney General, filed in the Supreme
Judicial Court for the county of Suffolk on October 16,
1935.

By order of *Crosby*, J., an interlocutory decree was entered
overruling exceptions to, and confirming, a report by a
master; and he then reported the case to the full court for
determination.

*M. M. Goldman*, Assistant Attorney General, for the
Attorney General.

*H. C. Thompson*, (*J. M. Langan* with him,) for the
respondent.

QUA, J. This is a petition brought by the Attorney
General setting forth certain activities of the respondent
corporation which it is contended constitute the practice
of law and violate the provisions of G. L. (Ter. Ed.) c. 221,
§ 46, as amended by St. 1935, c. 346, § 1. The petition
prays that this court make such order as it may deem ex-
pedient prohibiting the respondent from continuing such
activities. G. L. (Ter. Ed.) c. 221, § 46B, inserted by St.
1935, c. 346, § 2.

A corporation cannot lawfully practise law. *Opinion of the Justices*, 289 Mass. 607, 612–613. *Matter of Maclub of America, Inc., ante*, 45, 47. All practice of law by corporations is now expressly forbidden by statute. G. L. (Ter. Ed.) c. 221, § 46, as amended by St. 1935, c. 346, § 1. In addition to this sweeping prohibition against the practice of law the statute also expressly forbids the doing by corporations of certain specified acts comprised in or related to such practice. Material portions of said § 46 as amended read as follows: "No corporation or association shall practice or appear as an attorney for any person other than itself in any court in the commonwealth or before any judicial body or hold itself out to the public or advertise as being entitled to practice law, and no corporation or association shall draw agreements, or other legal documents not relating to its lawful business, or draw wills, or give legal advice in matters not relating to its lawful business, or practice law, or hold itself out in any manner as being entitled to do any of the foregoing acts, by or through any person orally or by advertisement, letter or circular . . . ." The questions here presented are whether and in what respects the respondent is practising law or otherwise violating the statute.

The master's report discloses these facts: The respondent does a large business in the collection and adjustment of commercial accounts for goods sold, mainly in behalf of wholesale merchants and manufacturers in the shoe business.* See G. L. (Ter. Ed.) c. 93, § 24. Its method of procedure has been to demand payment of the debtor by letter and by personal interview, telling him "of legal lia-

---

* The findings of the master respecting the charter of the respondent were as follows: "The charter of the respondent gives this corporation the right to engage in the collection of accounts, to adjust disputes or controversies among subscribers and customers 'which might be the subject of any action or suit in equity'; 'to purchase any claim or claims'; to operate agencies for the collection of claims; 'to enforce payment thereof by any legal or equitable process'; 'to generally handle claims, adjustments or choses in action of subscribers or others of every sort and kind arising from or on account of any cause whatsoever relating to the shoe industry to the same extent that a natural person might or could lawfully do'; 'to advance money to subscribers or any bona fide claim or claims placed with it for collection'; 'and to enforce payment thereof by any legal or equitable process'; but states that the corporation does not intend to practice law." — REPORTER.

bility" and including threats to "take action," to "forward to attorney for attention" and the like. It is generally understood with the "client" or customer that if these methods fail, the respondent shall have the right to forward the claim to some attorney to be selected by the respondent. The practice has been to explain to the customer that no claim would be referred to an attorney without his permission, and upon receiving permission, the respondent would send the matter to an attorney for legal action. The respondent advises and recommends suit by attachment or otherwise. In almost every case the respondent has selected the attorney, the customer leaving the selection to the respondent. The attorney and the creditor seldom correspond directly with each other. In almost every case the "client" never knows who his attorney is. The respondent instructs the attorney to commence suit against the debtor. It advances costs to the attorney and transmits to him the necessary papers and information. In these cases, except for a small "suit fee," the attorney retains sixty per cent of the collection charges and pays the respondent forty per cent. The money is forwarded to the "client" through the respondent. The respondent fixes the attorney's charges. It advises the attorney "as to the method of suit and the steps to pursue." It imposes conditions upon him. It supervises the conduct of the transaction. It "constantly acts between the creditor and the selected attorney." "A large number of the respondent's clients allow the respondent to have full discretion as to settlement, compromise, or suits at law." An important part of the business of the respondent has involved the giving of advice to debtors to make assignments for the benefit of creditors and as to the advantages and disadvantages of such assignments and of bankruptcy and credit extension agreements. It draws or copies forms of assignments and agreements. Proofs of claim and powers of attorney in bankruptcy and assignments for the benefit of creditors are signed by the "client" with the name of the attorney blank. The respondent fills in the name of the selected attorney or sends the forms to the attorney, who inserts his name. Counsel have been engaged to give

legal opinions as to the validity of agreements. The respondent has given no opinions as to the legal aspect of claims, "except after advice from counsel."

We believe it is impossible to frame any comprehensive and satisfactory definition of what constitutes the practice of law. To a large extent each case must be decided upon its own particular facts. But at least it may be said that in general the practice of directing and managing the enforcement of legal claims and the establishment of the legal rights of others, where it is necessary to form and to act upon opinions as to what those rights are and as to the legal methods which must be adopted to enforce them, the practice of giving or furnishing legal advice as to such rights and methods and the practice, as an occupation, of drafting documents by which such rights are created, modified, surrendered or secured are all aspects of the practice of law. If there are exceptions to this statement, they are not such as need concern us in this instance. Long experience has demonstrated that such activities cannot be carried on with fairness to the persons whose rights are involved or with safety to the public, except by those who have specially fitted themselves for the task by long study and preparation, who are subject to professional discipline, and who act under the constant sense of professional responsibility. The purpose of the requirement of a license as a condition of the right to practise law, as in the instances of the physician, the insurance broker, the auctioneer and of others where licenses are required, is not to protect the practitioner, but to protect the public.

The facts found show that at a number of points the respondent has extended its operations beyond the legitimate field of lay business and into the field which public policy requires should be reserved for the professional practitioner. It has given legal advice, both through its president, who is not a lawyer, and through lawyers employed by it. It has drawn agreements and other legal documents of various kinds relating to the business of others than itself. It has determined whether or not legal proceedings should be instituted and has exercised full discretion as to settlements

and compromises and has advised relative thereto and as to the method of procedure. It has employed attorneys to carry on litigation who are in effect its agents and whose dealings are with it alone, thereby furnishing or selling legal services and destroying the relation of direct personal confidence and responsibility which ought to exist between attorney at law and client, and attempting to assume that relation in its own corporate capacity. It has done all of these things habitually and as part of the business which it carries on for profit. And it is a necessary inference from the facts found that it has held itself out as being entitled to do these things. All of these acts involve the practice of law. They fall within both general and specific prohibitions of the statute.

The views here expressed are supported in various aspects by the following authorities: *Matter of Maclub of America, Inc., ante,* 45, and cases cited on page 51; *Creditors National Clearing House, Inc.* v. *Bannwart,* 227 Mass. 579; *Opinion of the Justices,* 289 Mass. 607; *Berk* v. *State,* 225 Ala. 324; *People* v. *Peoples Stock Yards State Bank,* 344 Ill. 462; *Midland Credit Adjustment Co.* v. *Donnelley,* 219 Ill. App. 271, 275; *In re Otterness,* 181 Minn. 254; *Fitchette* v. *Taylor,* 191 Minn. 582; *Matter of Co-operative Law Co.* 198 N. Y. 479; *People* v. *Alfani,* 227 N. Y. 334; *People* v. *Peoples Trust Co.* 180 App. Div. (N. Y.) 494; *L. Meisel & Co.* v. *National Jewelers Board of Trade,* 90 Misc. (N. Y.) 19; *In re Duncan,* 83 S. C. 186; *State* v. *Retail Credit Men's Association of Chattanooga,* 163 Tenn. 450; *State* v. *James Sanford Agency,* 167 Tenn. 339.

There was no error in ordering the master's report confirmed. A final decree is to be entered in favor of the petitioner prohibiting the respondent from continuing the unlawful acts hereinbefore enumerated and from practising law. The details of the decree are to be determined by a single justice.

*Ordered accordingly.*