HOME BUDGET SERVICE, INC. & others *vs.* BOSTON BAR ASSOCIATION & another.

Suffolk. November 5, 1956. — January 7, 1957.

Present: WILKINS, C.J., RONAN, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Debt Pooling. Constitutional Law*, Separation of powers of government, Judiciary.

G. L. (Ter. Ed.) c. 221, § 46C, inserted by St. 1955, c. 697, § 1, was an enactment in aid of the power of the judicial department to determine who may practise law and was valid and constitutional as applied to corporations no officer, director or employee of which was a member of the bar and to an individual not a member of the bar while engaged in debt pooling activities falling within the scope of § 46C and constituting practice of law when viewed as a whole, even though they did not make court appearances, prepare legal documents, or contest creditors' claims or advise debtors as to their validity.

BILL IN EQUITY, filed in the Superior Court on November 16, 1955.

The suit was reported by *Brogna*, J.

*Edward O. Proctor*, for the plaintiffs.

*Charles B. Rugg*, (*Robert D. Hartshorne, Jr.*, with him,) for the defendants.

WILKINS, C.J. The plaintiffs, two Massachusetts corporations and an individual resident in the Commonwealth, bring this bill of complaint against Boston Bar Association and Massachusetts Bar Association and seek a declaratory decree as to the constitutionality of St. 1955, c. 697, en-

titled "An Act relative to debt pooling plans." The defendants counterclaim asking injunctive relief against the plaintiffs. See *Growers Outlet, Inc.* v. *Stone*, 333 Mass. 437, 441. The facts are agreed. A judge of the Superior Court with the consent of the parties reported the case without decision. G. L. (Ter. Ed.) c. 214, § 30.

Statute 1955, c. 697, has two sections. Section 1 inserts in G. L. (Ter. Ed.) c. 221, the following new § 46C: "The furnishing of advice or services for and in behalf of a debtor in connection with any debt pooling plan, whereby such debtor deposits any funds for the purposes of making pro rata payments or other distributions to his creditors, shall be deemed to be the practice of law within the provisions of sections forty-six and forty-six A. Any person who, not being a member of the bar of the commonwealth, furnishes or offers to furnish any such advice or services, shall be punished by a fine of not more than five hundred dollars or by imprisonment for not more than six months or both." Section 2 brings § 46C within the scope of G. L. (Ter. Ed.) c. 221, § 46B, as amended by St. 1947, c. 75, thereby causing § 46B to read: "The supreme judicial court and the superior court shall have concurrent jurisdiction in equity, upon petition of any bar association within the commonwealth, or of three or more members of the bar of the commonwealth, or of the attorney general, or of the district attorney within his district, to restrain violations of section forty-six, forty-six A or forty-six C."

Neither the individual plaintiff nor any officer, director, or employee of the corporate plaintiffs is a member of the bar of the Commonwealth. All three plaintiffs are engaged, within the meaning of St. 1955, c. 697, in furnishing advice or services for and in behalf of debtors in connection with debt pooling plans whereby debtors deposit funds for the purpose of making pro rata payments or other distributions to their creditors.

Each plaintiff runs newspaper advertisements aimed at debtors who find themselves in such financial distress that they cannot meet their obligations with their creditors. A

debtor who gets in touch with a plaintiff is requested to disclose his total income, basic living expenses, total indebtedness, the nature and balance of each creditor's claim, and the steps any creditor has taken to collect. The debt pooler works out a plan or budget under which a certain amount is to be deposited each week or month with the debt pooler for distribution. The amount each creditor will receive weekly or monthly depends upon the nature and amount of his claim, the amount of any security, and the extent of pressure exerted for payment. Creditors in the strongest positions receive the largest payments proportionately. Thus, a conditional vendor may receive the full payments called for by his contract.

A debtor engaging the services of a debt pooler enters into a written agreement whereby he undertakes to make the weekly or monthly deposits; and the debt pooler undertakes to use its best efforts to persuade creditors to accept payments according to the plan, and, if successful, to distribute such payments. The agreement states the amount of the debt pooler's service fee, normally not more than six per cent of the total indebtedness, to be collected from deposits made by the debtor. There is also an administration charge of from ten to fifteen cents per creditor per week. The agreement may be terminated by the debtor at any time, but by the debt pooler only if the debtor fails to make the agreed deposits. Debtors are instructed to refer all communications from creditors or their attorneys to the debt pooler, which will endeavor to work out satisfactory terms of adjustment.

After an agreement is signed, the debt pooler writes the creditors or their attorneys, stating that it has been engaged to assist the debtor in the adjustment and liquidation of his debts; that the debtor is anxious to meet his obligations but is unable to do so upon the terms contracted for; and that under the proposed new plan of payment the debt pooler will forward to a particular creditor or his attorney a stated amount weekly or monthly which represents the maximum which the debtor can pay on that creditor's claim consist-

ently with the orderly liquidation of all his obligations.  The letter points out the advantages of the plan, urges coöperation, and advises that the debt pooler will commence and continue to make payments under the plan unless it hears from the creditor or his attorney.

In cases where creditors or their attorneys refuse to agree to accept payment on the proposed terms, the debt pooler attempts a compromise of the amount of the weekly or monthly payments.  It is not the practice of the debt pooler to contest the validity of claims or amounts except as to the extension of time for payment.  If a creditor or his attorney agrees with the debt pooler to a compromise figure of weekly or monthly payments higher than originally proposed, the plan and the amount of the debtor's deposits are revised accordingly.

After the plan is in operation, debtors refer dunning letters, telephone calls, complaints, threats, and other communications from their creditors or their creditors' attorneys to the debt pooler, which then negotiates in an effort to persuade a creditor not to attempt to collect his claim independently of the plan.  Among the situations in which the debt pooler so acts are where a creditor refuses to agree to the plan or becomes dissatisfied and demands payment on the original terms; or, being secured, threatens to foreclose his lien; or threatens to approach the debtor's employer; or institutes legal proceedings; or, holding a judgment, seeks to enforce it.  In negotiating in any of these situations the debt pooler again attempts to persuade the creditor to accept payments under the plan, or offers to increase payments, or even to pay a claim in full.  In some instances the plaintiffs have continued to negotiate after suit has been brought.  If the debt pooler is unable to reach an agreement with a creditor as to the terms of payment, the debtor is informed of the creditor's attitude, and is told to deal direct, or, if he prefers, to withdraw from the plan.  He is also told if necessary to engage an attorney of his own choosing or, in an appropriate case, to go to a legal aid society.  The debt poolers do not make court appearances or prepare legal documents.

The conduct of the plaintiffs presents features of the practice of law, and viewed as a whole amounts substantially to that. An important difference between their conduct and that of lawyers is in the inception of the relationship, which arises in a manner not permitted to the legal profession. The distressed debtor unable to look out for his financial affairs is importuned through the public press to engage for a consideration the services of a skilled handler. If he responds, there then comes into being a basic relationship of trust and confidence. To the hired negotiator the debtor makes a complete disclosure of his financial secrets, his income, and an account of his indebtedness to the last detail. Entrusted with such information, the debt pooler evolves a program which it advises the debtor to accept as one which under its administration might free him from financial embarrassment. Authorized in writing, the debt pooler enters into direct negotiation at the sources of the debtor's distress, dealing indiscriminately with creditors or their attorneys, undeterred by judgments, pending suits, or attachments. Indeed the greater the pressure, legal and otherwise, the greater the percentage of the entrusted fund the debt pooler will in its own discretion allocate to the reduction of a given claim. In a situation of insolvency — for the debtor is unable to pay his debts as they mature — the debt pooler is engaged to develop and carry out a series of compromises, which, irrespective of litigation, will ward off bankruptcy. The antagonists may be members of the bar subject to the ethical standards and discipline of their profession. The plaintiffs, according to their own contention, are not subject to similar regulation, because they are business men engaged in arm's length dealings in the commercial arena. That the debt pooler neither enters the court room nor prepares legal documents does not save its conduct from classification as the practice of law. Nor is there escape in the fact that it does not advise as to the validity of claims; for, quite to the contrary, its omission to do so may be a surrender to some demands which a member of the bar perhaps ought to question and advise the debtor to contest. The debt pool-

er's plan and its administration thus exclude the debtor from skilled professional legal advice. So, where there is a conditional sale contract, the creditor may be paid, even in full, notwithstanding that there may have been no compliance with the applicable statutes. In this field the rules of law are most stringent, and the condition of the sale may be lost because of some departure in the contract from the prescribed statutory language. See, for example, *Lehan* v. *North Main Street Garage, Inc.* 312 Mass. 547; *Mogul* v. *Boston Acceptance Co. Inc.* 328 Mass. 424; *Clark* v. *A & J Transportation Co. Inc.* 330 Mass. 327; *Clark & White, Inc.* v. *Fitzgerald,* 332 Mass. 603; *Nickerson* v. *Zeoli,* 332 Mass. 738.

From this analysis of the plaintiffs' methods it is apparent that they have "extended . . . operations beyond the legitimate field of lay business and into the field which public policy requires should be reserved for the professional practitioner." *Matter of Shoe Manufacturers Protective Association, Inc.* 295 Mass. 369, 372. Debt pooling as set forth in the agreed facts differs from mere bill collecting by a lay agent named by a creditor to present a claim to a debtor and to receive payment.

The statute here assailed is not unconstitutional as an interference with the purely judicial function to determine who may practise law but is a valid enactment in aid of the court's power to make such a determination. *Opinion of the Justices,* 279 Mass. 607, 611. *Opinion of the Justices,* 289 Mass. 607, 612. *Keenan, petitioner,* 310 Mass. 166, 177. *Matter of Keenan,* 313 Mass. 186, 196, 212. *Lowell Bar Association* v. *Loeb,* 315 Mass. 176, 179. *Creditors' Service Corp.* v. *Cummings,* 57 R. I. 291, 300.

The defendants' counterclaim seeks relief expressly authorized by St. 1955, c. 697, § 2. *Board of Survey of Lexington* v. *Suburban Land Co.* 235 Mass. 108, 113. *Commonwealth* v. *Stratton Finance Co.* 310 Mass. 469, 474. *Malden* v. *Flynn,* 318 Mass. 276, 282.

A final decree will be entered declaring that St. 1955, c. 697, is constitutional as applied to the plaintiffs and their

debt pooling operations; enjoining the plaintiffs from violation of G. L. (Ter. Ed.) c. 221, § 46C, inserted by St. 1955, c. 697, § 1, and of G. L. (Ter. Ed.) c. 221, § 46A, inserted by St. 1935, c. 346, § 2; and enjoining the corporate plaintiffs from violation of G. L. (Ter. Ed.) c. 221, § 46, as appearing in St. 1935, c. 346, § 1.

*So ordered.*