The REAL ESTATE BAR ASSOCIA-
TION FOR MASSACHUSETTS,
INC., Plaintiff,

v.

NATIONAL REAL ESTATE INFOR-
MATION SERVICES and National
Real Estate Information Services,
Inc., Defendants.

Civil Action No. 07–10224–JLT.

United States District Court,
D. Massachusetts.

April 13, 2009.

R. Bruce Allensworth, Ryan M. Tosi, K & L Gates LLP, Brian Marc Forbes, Irene C. Freidel, Kirkpatrick & Lockhart Preston Gates Ellis LLP, Douglas W. Salvesen, Yurko, Salvesen & Remz, P.C., Boston, MA, for Defendants.

Lawrence R. Kulig, Benjamin M. McGovern, Holland & Knight, LLP, Boston, MA, Gael Mahony, Holland & Knight, LLP, Providence, RI, for Plaintiff.

Michael DeMarco, Robert W. Sparkes, III, K & L Gates LLP, Michael D. Ricciuti, Kirkpatrick & Lockhart Preston Gates Ellis LLP, Boston, MA, for Counter Claimant.

Anthony B. Fioravanti, Yurko Salvesen & Remz, P.C., Boston, MA, for Counter Defendant.

Jessica G. Gray, Robert J. Muldoon, Jr. Sherin & Lodgen LLP, Boston, MA, Amicus.

## MEMORANDUM

TAURO, District Judge.

### I. *Introduction*

Plaintiff claims that real estate conveyancing and the issuance of title insurance constitute the practice of law in Massachusetts and that Defendants, nonlawyers who conduct such services, have engaged in the unauthorized practice of law. Plaintiff also claims that Defendants have engaged in the unauthorized practice of law by conducting so-called "notary closings." Defendants counterclaim that Plaintiff's interpretation of what constitutes the practice of law under the Massachusetts unauthorized practice of law statutes violates the Dormant Commerce Clause of the U.S.

Constitution. Both Parties seek declaratory and injunctive relief. Presently at issue are Parties' cross-motions for summary judgment. For the following reasons, Defendants' *Motion for Summary Judgment* and *Motion for Summary Judgment on Dormant Commerce Clause Counterclaim* are ALLOWED, and Plaintiff's *Motion for Summary Judgment* is DENIED.

### II. *Background* [1]

Plaintiff The Real Estate Bar Association for Massachusetts, Inc. ("REBA"), formerly known as the "Massachusetts Conveyancers Association, Inc.," is a bar association comprised of approximately 3,000 Massachusetts real estate attorneys. National Real Estate Information Services, Inc. is a Pennsylvania corporation and the general partner of National Real Estate Information Services, a Pennsylvania limited partnership (collectively "NREIS"). NREIS is a multistate real estate settlement services provider, or "vendor manager," and title insurance agency. [2]

As a vendor manager, NREIS provides services related to residential real estate transactions. NREIS's services include title examinations, settlement services, deed preparation, and disbursement of mortgage loan proceeds. NREIS obtains the relevant title search information from a third-party vendor, such as Connelly Title Services, Inc. For real estate purchases, NREIS hires North American Deed Company, Inc., located in Las Vegas, Nevada, to prepare the deed. NREIS then schedules the real estate closing with, and transmits the relevant closing documents to, a Massachusetts attorney. After the clos-

---

**1.** This court presents these facts in the light most favorable to Plaintiff, the party that does not prevail on summary judgment. *See Alliance of Auto. Mfrs. v. Gwadosky,* 430 F.3d 30, 34 (1st Cir.2005) ("[L]ike the district court, we must scrutinize the record in the light most favorable to the summary judgment los-

er and draw all reasonable inferences therefrom to that party's behoof.").

**2.** REBA also named as a defendant Mark S. Solomon, whom this court dismissed on March 5, 2007.

ing, NREIS disburses the settlement funds, reviews the transaction documents to guarantee their proper completion, and ensures that the relevant documents are properly recorded. In addition to these activities, NREIS issues title insurance policies to lenders and property owners.

■ REBA brought this action on November 6, 2006 in the Superior Court, Suffolk County, and filed the Amended Complaint on February 2, 2007. REBA's claims seek (1) a declaratory judgment that NREIS's alleged "notary closings" constitute the unauthorized practice of law; (2) a declaratory judgment that NREIS's real estate conveyancing services constitute the unauthorized practice of law; and (3) a permanent injunction barring NREIS from engaging in the unauthorized practice of law.[3] NREIS removed to this court and filed the Answer and Counterclaim on February 6, 2007. NREIS's Counterclaim seeks (1) a declaratory judgment that REBA's interpretation of what constitutes the practice of law under the Massachusetts unauthorized practice of law statutes violates the Dormant Commerce Clause; and (2) a permanent injunction barring REBA from enforcing on NREIS its interpretation of what constitutes the practice of law.[4]

On October 17, 2008, NREIS moved for summary judgment on all REBA's claims. On December 12, 2008, REBA also moved for summary judgment on all its claims. On February 6, 2009, NREIS moved for summary judgment on its Dormant Commerce Clause Counterclaim.

## III. *Discussion*

At the core of REBA's claims is its argument that real estate conveyancing constitutes the practice of law in Massachusetts. This contention rests on the premise that real estate conveyancing is an "interconnected series of activities that must be performed in order to convey the various legal interests in the real estate."[5] According to REBA, real estate conveyancing consists of a cohesive set of steps, each of which is inseparable from the other, that is necessary to effect a legal transfer of real estate. Broadly, these steps consist of the following: (1) examination of legal title; (2) resolution of any clouds on title; (3) the settlement, or "closing"; and (4) recordation of title documents and disbursement of mortgage proceeds.

REBA's initial step in a real estate conveyance is the title examination. This process generally begins at the registry of deeds, where the title searcher initiates the title examination by working backwards from the present owner's deed to a deed that is facially valid and at a statutorily prescribed starting point.[6] Then, the title searcher "runs" the title forward from the starting point, examining every deed from every grantor in the chain of title and reviewing the title for any "clouds." The examination may also require review of off-record matters to determine the state of title.

REBA's next step is the resolution of any clouds on title. Clouds on title are

---

**3.** Specifically, REBA brings this action under chapter 221, sections 46, 46A, and 46B of the Massachusetts General Laws. *See infra* notes 25–27.

**4.** A party may bring a Dormant Commerce Clause claim under 42 U.S.C. § 1983. *See Dennis v. Higgins,* 498 U.S. 439, 448, 111 S.Ct. 865, 112 L.Ed.2d 969 (1991).

**5.** Pl.'s Mem. Supp. Summ. J. 1, Dec. 12, 2008.

**6.** For Massachusetts residential real estate, the title examination must "cover[ ] a period of at least fifty years with the earliest instrument being a warranty or quitclaim deed which on its face does not suggest a defect in said title." Mass. Gen. Laws Ann. ch. 93, § 70 (West 2009).

defects that originate from some claim or encumbrance.[7] Because clouds on title can arise in numerous ways, the ways in which they can be cured are equally numerous. For example, if an outstanding mortgage encumbers title, the cure may be settlement of the mortgage. For other title defects, the cure may require the execution of documents. For more difficult title defects, the cure may require judicial intervention.

REBA's third step is the closing. Before the closing, all necessary documents must be drafted. In Massachusetts, these documents may include the application for the mortgage loan, the acceptance of the mortgage commitment, an agreement as to the adjustment of property taxes, an affidavit of owner occupancy, a notice of the lead paint law and a release of the lender from liability,[8] a smoke detector certification agreement,[9] a certificate regarding an approved carbon monoxide alarm,[10] a certificate of nonforeign status,[11] an affidavit permitting the lender to obtain title insurance without exceptions for mechanics' liens and persons in possession, the truth-in-lending disclosure statement,[12] disclosure of the lender's intent with respect to the assignment of mortgage loan servicing,[13] a notice of the three-day right to rescind for mortgage refinances,[14] the promissory note, and the mortgage. An additional document related to the closing is the settlement statement, which accounts for the transaction proceeds. For federally regulated mortgage loans, a Uniform Settlement Statement must be completed.[15] At the closing, the parties exchange and sign the necessary documents, and transfer the required consideration. For real estate purchases, a valid deed must be executed. After the parties have executed the necessary documents, the Uniform Settlement Statement must be executed.

REBA contends that NREIS's alleged practice of "notary closings" constitutes the unauthorized practice of law. According to REBA, a "notary closing" is a closing in which an attorney attends the settlement but

> is not involved in the preparation or review of documents to be executed by the parties, the examination or review of title, the recording of documents or the disbursement of funds to pay off existing mortgages. The attorney has no role in the process of reviewing the title or clearing the title to the real estate being conveyed. He simply is there to witness the parties execute the necessary documents—much like a notary.[16]

REBA's final step is the recordation of title documents and disbursement of mortgage proceeds. Though execution and delivery of the deed suffices to transfer a legal property interest between the parties to a real estate transaction, the title documents must be recorded at the registry of deeds. These include the deed, mortgage, and any other necessary documents. Aside from the mortgage loan proceeds,

---

7.  *See Black's Law Dictionary* 272 (8th ed. 2004) ("A defect or potential defect in the owner's title to a piece of land arising from some claim or encumbrance, such as a lien, an easement, or a court order.").

8.  *See* Mass. Gen. Laws Ann. ch. 111, §§ 190–199.

9.  *See id.* ch. 148, §§ 26E, 26F.

10. *See id.* § 26F 1/2.

11. *See* I.R.C. § 1445 (2006).

12. *See* 15 U.S.C.A. §§ 1601–1638 (West 2009).

13. *See* 12 U.S.C.A. § 2605(a) (West 2009).

14. *See* 15 U.S.C.A. § 1635.

15. *See* 24 C.F.R. § 3500.8 (2009).

16. Pl.'s Mem. Supp. Summ. J. 20, Dec. 12, 2008.

which are due to the mortgagor before the deed or mortgage may be recorded,[17] the loan proceeds are then disbursed in accordance with the Uniform Settlement Statement.

In addition to its claims that the practice of law encompasses all the interconnected steps of a real estate conveyance and that "notary closings" constitute the unauthorized practice of law, REBA asserts that the issuance of title insurance must be performed or directed by lawyers.

A. *Legal Standard for Summary Judgment*

A court may grant summary judgment when the moving party has shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[18] The court must examine the facts in the light most favorable to the nonmoving party, resolving any reasonable inference in that party's favor.[19] The opposing party has the burden of production to "set forth specific facts showing that there is a genuine issue for trial."[20] Neither party, however, "may rely on conclusory allegations or unsubstantiated denials, but must identify specific facts derived from the pleadings, depositions, answers to interrogatories, admissions, and affidavits to demonstrate either the existence or absence of an issue of fact."[21] Summary judgment may enter when a party fails to show evidence sufficient to establish an essential element of its case on which it bears the burden of proof at trial.[22]

B. *The Practice of Law in Massachusetts*

■ The judicial branch of government has exclusive power to determine what constitutes the practice of law.[23] The legislature may not extend the privilege to practice law to persons that the judiciary does not admit, but it may enact laws forbidding the "practice of the law by corporations or associations or by individuals other than members of the bar."[24] To this end, the Massachusetts legislature has passed "unauthorized practice of law" statutes proscribing the practice of law by corporations or associations[25] and persons not authorized to practice.[26] Any bar association within the commonwealth may petition the courts to restrain violations of the Massachusetts unauthorized practice of law statutes.[27]

As the Massachusetts Supreme Judicial Court ("SJC") has stated, "It is not easy to define the practice of law."[28] The SJC

---

17. *See* Mass. Gen. Laws Ann. ch. 183, § 63B.

18. Fed.R.Civ.P. 56(c).

19. *Dasey v. Anderson,* 304 F.3d 148, 153 (1st Cir.2002).

20. Fed.R.Civ.P. 56(e).

21. *Magee v. United States,* 121 F.3d 1, 3 (1st Cir.1997).

22. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

23. *E.g., In re Opinion of the Justices,* 289 Mass. 607, 194 N.E. 313, 316 (1935) ("It is inherent in the judicial department of government under the Constitution to control the practice of the law, the admission to the bar of persons found qualified to act as attorneys at law and the removal from that position of those once admitted and found to be unfaithful in their trust.").

24. *Id.* (internal quotations omitted).

25. *See* Mass. Gen. Laws Ann. ch. 221, § 46 (prohibiting the unauthorized practice of law by corporations and associations).

26. *See id.* § 46A (prohibiting the unauthorized practice of law by individuals).

27. *See id.* § 46B.

28. *Lowell Bar Ass'n v. Loeb,* 315 Mass. 176, 52 N.E.2d 27, 31 (1943).

has addressed the question of what constitutes the practice of law on a case-by-case basis, explaining that "[t]o a large extent each case must be decided upon its own particular facts." [29]   Indeed, the SJC has found it "impossible to frame any comprehensive and satisfactory definition of what constitutes the practice of law." [30]

Though the SJC has declined to fashion a comprehensive definition, it has provided a general outline of the activities that constitute the practice of law:

> [A]t least it may be said that in general the practice of directing and managing the enforcement of legal claims and the establishment of the legal rights of others, where it is necessary to form and to act upon opinions as to what those rights are and as to the legal methods which must be adopted to enforce them, the practice of giving or furnishing legal advice as to such rights and methods and the practice, as an occupation, of drafting documents by which such rights are created, modified, surrendered or secured are all aspects of the practice of law.[31]

The SJC has also added that "the examination of statutes, judicial decisions, and departmental rulings, for the purpose of advising upon a question of law … and the rendering to a client of an opinion thereon, are likewise part of the practice of law." [32]

### 1.   Real Estate Conveyancing

Central to REBA's claims in this case is the SJC's 1935 advisory opinion *In re Opinion of the Justices*,[33] in which the SJC stated that the "[p]ractice of law …. embraces conveyancing." [34]   REBA relies on this statement in arguing that the SJC intended the term "conveyancing" to include not only the closing, but also the initial title search, resolution of any clouds on title, and the recordation of title documents and disbursement of mortgage proceeds after the closing.   But REBA's interpretation of the term "conveyancing" for purposes of defining what constitutes the practice of law is undercut by the very case on which REBA relies.   Later in *In re Opinion of the Justices*, the SJC listed activities that "do not constitute the practice of law" and included "the search of records of real estate to ascertain what may there be disclosed without giving opinion or advice as to the legal effect of what is found." [35]   Instead of defining "conveyancing" broadly to include simple title searches, the SJC explicitly rejected an interpretation of the practice of law that would include a title search absent the giving of any legal advice.

Furthermore, the definition of "conveyance" is a "transfer of an interest in real property from one living person to another, by means of an instrument such as a deed." [36]   The definition of "conveyancing" is "[t]he act or business of drafting and preparing legal instruments, esp[ecially] those (such as deeds or leases) that transfer an interest in real property." [37]   These definitions correspond with the closing and the preparation therefor, not with other activities that REBA asserts are interconnected to a real estate conveyance.   Final-

---

29.   *In re Shoe Mfrs. Protective Ass'n,* 295 Mass. 369, 3 N.E.2d 746, 748 (1936).

30.   *Id.*

31.   *Id.*

32.   *Loeb,* 52 N.E.2d at 33.

33.   289 Mass. 607, 194 N.E. 313.

34.   *Id.* at 317.

35.   *Id.* at 318.

36.   *Black's Law Dictionary, supra* note 7, at 358.

37.   *Id.*

ly, this reading is in line with what Parties apparently agree is the current practice in Massachusetts of having an attorney supervise the closing.[38]

Later opinions by the SJC also appear to reject REBA's broad reading of *In re Opinion of the Justices*. In *Lowell Bar Ass'n v. Loeb*, the SJC adopted "the proposition that the drafting of documents, when merely incidental to the work of a distinct occupation, is not the practice of law, although the documents have legal consequences."[39] The SJC proceeded to hold in *Loeb* that "the preparation of the income tax returns in question, though it had to be done with some consideration of the law, did not lie wholly within the field of the practice of law."[40] In *Goldblatt v. Corp. Counsel of Boston*, the SJC "assume[d] that persons, who are not attorneys, may do research in the registries of deeds, make reports (and even recommendations) to attorneys, and give practical advice with respect to the possibilities of collecting particular taxes."[41] And in *In re Chimko*, the SJC held that "preparation of [a] reaffirmation agreement is akin to the nonattorney's preparation of preprinted income tax returns, conduct [the SJC has] held not to be the practice of law."[42] The SJC also held in *In re Chimko* that filing a pleading with a bankruptcy court and using law firm letterhead for correspondences did not constitute the practice of law.[43]

■ These cases imply that certain steps that REBA asserts are related to a real estate conveyance do not, by themselves, constitute the practice of law in Massachusetts. Such steps include conducting a simple title search[44] and completing forms in preparation for a closing.[45] The common thread in these cases is that the party accused of engaging in the unauthorized practice of law did not "invoke[ ] his professional judgment in applying legal principles to address [a client's] individualized needs ... or dispense[ ] legal advice."[46] The same can be said of certain steps that REBA argues are interconnected to a real estate conveyance.

REBA concedes that "not every step in [a conveyancing] process is a legal act" but still argues that "because these steps are necessary and integral to a conveyance of real property, they either must be performed by the attorney or be within the

38. *See, e.g.*, Defs.' Mem. Supp. Summ. J. Counterclaim 16, Feb. 6, 2009 ("NREIS schedules the closing on a real estate transaction with a Massachusetts attorney[,] .... [a]lthough NREIS does not concede that Massachusetts lawyers are necessary to avoid conflict with the UPL statute...."); Benincasa Dep. 88:13–15, Sept. 23, 2008 (stating, as NREIS's Senior Director of Settlement Services, that according to her "understanding, in the State of Massachusetts, an attorney must conduct the closing, not a notary").

39. 52 N.E.2d at 31.

40. *Id.* at 34.

41. 360 Mass. 660, 277 N.E.2d 273, 277 (1971).

42. 444 Mass. 743, 831 N.E.2d 316, 322 (2005).

43. *See id.* at 322–24.

44. *See Goldblatt*, 277 N.E.2d at 277 (nonattorneys may "do research in the registries of deeds"); *In re Opinion of the Justices*, 194 N.E. at 318 (nonattorneys may perform a "search of records of real estate to ascertain what may there be disclosed without giving opinion or advice as to the legal effect of what is found").

45. *See In re Chimko*, 831 N.E.2d at 322 (nonattorneys may prepare reaffirmation agreements); *Loeb*, 52 N.E.2d at 34 (nonattorneys may prepare preprinted income tax returns).

46. *In re Chimko*, 831 N.E.2d at 322 (citations and quotations omitted).

attorney's control or supervision."[47] This distinction, however, appears to be at odds with the above cases and with Massachusetts law providing that "the practice of directing and managing ... the establishment of the legal rights of others" constitutes the practice of law.[48] In other words, the SJC does not distinguish between practicing law and directing others who are practicing law—both qualify as the practice of law. Contrary to REBA's assertions, this suggests that because an attorney would be required to perform or direct any activity that does constitute the practice of law, an attorney would not be required to direct an activity that, by itself, does not qualify as the practice of law.

Beyond the above rulings appearing to contradict REBA's broad construction of the practice of law, the SJC has not explicitly addressed whether the practice of law embraces all the interconnected activities of a real estate conveyance. REBA's citations to non-SJC opinions[49] are not helpful, as they do not carry precedential value.[50] REBA has also cited *In re Eric Levine*,[51] an opinion issued by Justice Sosman sitting in review of a Board of Bar Overseers disciplinary matter. Though Justice Sosman extended the suspension of Mr. Levine's bar license due to his engaging in activities similar to those at issue in this case, Justice Sosman was not speaking for the entire SJC and explicitly declined "to define the precise boundary between the provision of essentially administrative services preparatory to real estate transactions and the provision of legal services in

47. Pl.'s Mem. Opp'n Defs.' Mot. Summ. J. 5, Mar. 9, 2009.

48. *In re Shoe Mfrs. Protective Ass'n*, 3 N.E.2d at 748.

49. *Cf. Mass. Conveyancers Ass'n, Inc. v. Colonial Title & Escrow, Inc.*, No. Civ.A. 96–2746–C, 2001 WL 669280, at *7–8 (Mass.Super. Ct. June 5, 2001) (holding that the following activities constitute the practice of law: (1) "Evaluating title to real estate to determine the interest created, transferred or terminated and communicating that evaluation to any interested party to a residential real estate transaction"; (2) "Evaluating and ensuring that parties to a real estate transaction have complied with their agreements"; (3) "Preparing, drafting or reviewing legal documents that affect title to real estate or affect the obligation of the parties to the real estate transactions"; (4) "Explaining at the closing any documents relating to the interest in the real estate being created, transferred or terminated and relating to the agreement of the parties"; (5) "Issuing title certification or policy of title insurance premised on Colonial's evaluation of title to real estate"; (6) "Holding itself out to lenders, title insurance companies or members of the public as willing and able to perform the functions enumerated in paragraphs 1–5 herein"; and (7) "Representing lenders as their closing agents"); *Mass. Ass'n of Bank Counsel, Inc. v. Closings,*

*Ltd.*, No. 903053C, 1993 WL 818916, at *2 (Mass.Super.Ct. Sept. 2, 1993) (holding that: (1) "The practice of law in Massachusetts includes the handling of residential real estate conveyancing and the following specific acts: (a) the preparation of deeds, mortgages, releases, transfers and other instruments affecting title to real estate and other agreements in connection with residential real estate closings; and (b) advising persons, firms and corporations as to their legal rights in connection with the conveyance of residential real estate"; and (2) "Through the use of lawyers, who are directed by and subject to the control of persons not members of the bar of the Commonwealth, to perform the above described services Closings is holding itself out as being able to handle all aspect of residential real estate closings, and therefore, Closings is in violation of G.L.c. 221, § 4").

50. *See, e.g., Johnson v. Fankell*, 520 U.S. 911, 916, 117 S.Ct. 1800, 138 L.Ed.2d 108 (1997) ("Neither this Court nor any other federal tribunal has any authority to place a construction on a state statute different from the one rendered by the highest court of the State.... This proposition [is] fundamental to our system of federalism ...." (citations omitted)).

51. No. BD–2002–075, 2004 WL 5214985 (Mass. St. Bar Disp. Bd. Apr. 15, 2004).

connection with such transactions." [52]

This court recognizes that the SJC has addressed the issue of what constitutes the practice of law on a case-by-case basis.[53] In accordance with that approach, the absence of an SJC opinion directly on point, and principles of federalism, this court declines to adopt REBA's novel construction of the practice of law as encompassing all the interconnected steps of a real estate conveyance.[54]

### 2. *"Notary Closings"*

The statement in *In re Opinion of the Justices* that the practice of law embraces "conveyancing" reflects an expectation that an attorney have at least some involvement with the closing.[55] Beyond that, the SJC has not provided guidance as to the level of involvement an attorney must have in preparing for and conducting the closing. Parties agree that NREIS engages an attorney to conduct the closing. Beyond REBA's conclusory allegations that "the attorneys that are sent to the settlement are more 'signing agent' than attorney" and that the attorney "simply is there to witness," [56] REBA has not identified specific facts demonstrating that NREIS

has engaged in the unauthorized practice of law at the closing stage.[57] To the contrary, NREIS attests that the attorneys it hires to conduct the closing fully satisfy and execute their professional obligations.[58] Accordingly, REBA's claim that NREIS is engaged in the unauthorized practice of law by conducting "notary closings" fails.

### 3. *The Issuance of Title Insurance*

■ Massachusetts law is clear that the issuance of title insurance need not be performed or directed by an attorney. The Massachusetts Rules of Professional Conduct, as set out in SJC Rule 3:07, expressly permit the issuance of title insurance by nonlawyers. Rule 5.7(b) of the Rules of Professional Conduct provides, "The term 'law-related services' denotes services that might reasonably be performed in conjunction with and in substance are related to the provision of legal services, and that are *not prohibited as unauthorized practice of law when provided by a nonlawyer.*" [59] Comment 9 to Rule 5.7(b) then specifically identifies "providing title insurance" as an example of a "law-related service." [60] Accordingly, REBA's claim that the issuance of title

---

**52.** *Id.*

**53.** *See In re Shoe Mfrs. Protective Ass'n*, 3 N.E.2d at 748.

**54.** *See Fankell*, 520 U.S. at 916, 117 S.Ct. 1800.

**55.** *See supra* notes 35–38 and accompanying text.

**56.** Pl.'s Mem. Supp. Summ. J. 20, Dec. 12, 2008.

**57.** *See, e.g., Magee*, 121 F.3d at 3 ("Neither party may rely on conclusory allegations or unsubstantiated denials, but must identify specific facts derived from the pleadings, depositions, answers to interrogatories, admissions, and affidavits to demonstrate either the existence or absence of an issue of fact.").

**58.** *See, e.g.,* Lammert Aff. 4 ("NREIS does not ask, request or instruct the Massachusetts attorneys who are engaged to conduct closings

in Massachusetts to act in any capacity other than as an attorney or to perform his or her job other than in full compliance with the applicable legal and ethical requirements in Massachusetts. Indeed, NREIS expects that the Massachusetts lawyers who are engaged for these closings advise the lender of any legal or ethical issues that would prevent those lawyers from complying with these requirements. NREIS expects the attorneys engaged to complete the closings to represent their client—the lender—as they would at any residential real estate closing and to act consistently with their professional obligations as attorneys.").

**59.** Mass. R. Prof. C. 5.7(b) (2008) (emphasis added).

**60.** *Id.* cmt. 9.

insurance constitutes the practice of law fails.

## C. *The Dormant Commerce Clause*

■ Because the SJC has not explicitly addressed whether the practice of law embraces all the interconnected activities of a real estate conveyance, this court reaches NREIS's argument that such an interpretation would violate the Dormant Commerce Clause. Relying on the First Circuit's decision in *National Revenue Corp. v. Violet,* which held that a Rhode Island statute defining debt collecting as the practice of law violated the Dormant Commerce Clause,[61] NREIS contends that, by including activities that, by themselves, do not constitute the practice of law, REBA's interpretation of the practice of law would place an impermissible burden on interstate commerce.[62] This court agrees.

### 1. *Legal Standard for Dormant Commerce Clause Claims*

The Commerce Clause grants Congress the power to "regulate commerce . . . among the several states."[63] Courts have interpreted "[t]his affirmative grant of power to the federal sovereign . . . to strip state governments of any authority to impede the flow of goods [or services] between states."[64] This so-called "Dormant Commerce Clause" doctrine[65] prohibits the "economic protectionism" embodied in the "[p]reservation of local industry by protecting it from the rigors of interstate competition."[66] A party may enforce its right to be free from state regulation of the interstate flow of goods or services under 42 U.S.C. § 1983.[67]

The Supreme Court has adopted "a two-tiered approach" to the Dormant Commerce Clause analysis.[68] First, "[w]hen a state statute directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests," the state law is "generally struck down . . . without further inquiry."[69] To fall into this first tier, the state law must "discriminate against interstate commerce 'either on its face or in practical effect.'"[70] In

---

**61.** 807 F.2d 285, 288–90 (1st Cir.1986).

**62.** *Cf. id.* at 289 ("[T]he question remains whether, by including activities that fall short of court proceedings, the state has put an impermissible burden on interstate commerce.").

**63.** U.S. Const. art. I, § 8, cl. 3.

**64.** *Cherry Hill Vineyard, LLC v. Baldacci,* 505 F.3d 28, 32–33 (1st Cir.2007).

**65.** *See id.* at 33.

**66.** *W. Lynn Creamery, Inc. v. Healy,* 512 U.S. 186, 205, 114 S.Ct. 2205, 129 L.Ed.2d 157 (1994).

**67.** NREIS has met the § 1983 threshold requirement of state action because REBA is acting under color of state law. A private actor is engaged in state action for purposes of § 1983 if the private actor "assumes a traditional public function when it undertakes to perform the challenged conduct." *Perkins v. Londonderry Basketball Club,* 196 F.3d 13, 18 (1st Cir.1999). The "public function" test requires that the private actor assume powers "traditionally [and] exclusively reserved to the State." *Rockwell v. Cape Cod Hosp.,* 26 F.3d 254, 258 (1st Cir.1994) (citations and quotations omitted). Here, the Massachusetts legislature delegated the authority to enforce the statutory prohibition against the unauthorized practice of law to any "bar association within the Commonwealth." Mass. Gen. Laws Ann. ch. 221, § 46B. REBA is a Massachusetts bar association.

**68.** *See Brown–Forman Distillers Corp. v. N.Y. State Liquor Auth.,* 476 U.S. 573, 578, 106 S.Ct. 2080, 90 L.Ed.2d 552 (1986).

**69.** *Id.* at 579, 106 S.Ct. 2080.

**70.** *Maine v. Taylor,* 477 U.S. 131, 138, 106 S.Ct. 2440, 91 L.Ed.2d 110 (1986) (quoting *Hughes v. Oklahoma,* 441 U.S. 322, 336, 99 S.Ct. 1727, 60 L.Ed.2d 250 (1979)).

these situations, the state law "will be sustained only when it promotes a legitimate state interest that cannot be achieved through any reasonable nondiscriminatory alternative." [71]

Second, when a state law "has only indirect effects on interstate commerce and regulates evenhandedly," the court conducts the *"Pike* balancing test." [72] According to the *Pike* balancing test, if the burden on interstate commerce is incidental, the state law "will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." [73] The Supreme Court "has candidly undertaken a balancing approach in resolving these issues, ... but more frequently it has spoken in terms of 'direct' and 'indirect' effects and burdens." [74]

### 2. *National Revenue Corp. v. Violet*

At issue in *Violet* was a Rhode Island statute that included under the term "practice of law" "the undertaking or acting as a representative or on behalf of another person to commence, settle, compromise, adjust or dispose of any civil or criminal case or cause of action." [75] The First Circuit agreed with the District of Rhode Island that the statute applied to debt collecting. Then—Attorney General of Rhode Island Arlene Violet defended

the statute on the grounds that "debt collection practices are intimately related to the use of state courts and the regulation of the practice of law in those courts." [76]

Here, REBA's reasoning is nearly identical to the argument that the Rhode Island attorney general presented in *Violet.* REBA contends that any step that is "interconnected" to a real estate conveyance, including steps that REBA concedes do not, by themselves, constitute the practice of law, must be performed or supervised by a lawyer because they "are necessary and integral to a conveyance of real property." [77] Just as REBA argues that there is an "interconnected series of activities" that is essential to a real estate conveyance,[78] Ms. Violet argued that "debt collection practices are intimately related to the use of state courts." [79] The method and motivation in this case essentially mirror those in *Violet.* The method is to require an attorney to perform or direct activities that do not, by themselves, constitute the practice of law because those activities happen to be closely related to activities that do constitute the practice of law. The motivation, to a large extent, is "to benefit the local bar." [80]

Like the Rhode Island statute in *Violet,* REBA's construction of the practice of law falls into the first tier of the Dormant Commerce Clause analysis.[81] Labeling

---

71. *Cherry Hill,* 505 F.3d at 33.

72. *Brown–Forman,* 476 U.S. at 579, 106 S.Ct. 2080.

73. *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970).

74. *Id.*

75. *Violet,* 807 F.2d at 288 (citation and quotation omitted).

76. *Id.* at 289 (citation and quotation omitted).

77. Pl.'s Mem. Opp'n Defs.' Mot. Summ. J. 4, 5, Mar. 9, 2009.

78. *Id.* at 4 (quoting Pl.'s Mem. Supp. Summ. J. 1–2, Dec. 12, 2008).

79. *Violet,* 807 F.2d at 289.

80. *Id.* at 290; *see also* Chris Reidy, *Massachusetts Measure Aims to Trim Closing Costs on Home Sales,* Boston Globe, June 26, 2004 (quoting a REBA officer as stating "We don't need outsiders coming into Massachusetts and telling us how to do things").

81. Judge Torruella dissented in *Violet,* finding that the Rhode Island statute imposed an "incidental and thus not unconstitutional" burden on interstate commerce. *See* 807 F.2d at 290–91. As explained below, REBA's argument would fail even under the second tier of

any activity that happens to be interrelated to a real estate conveyance the "practice of law" in Massachusetts would force out-of-state vendor services, like NREIS, to employ individuals who possess a Massachusetts legal license or to subcontract their services out to Massachusetts attorneys. Either way, REBA's interpretation of the practice of law would be a substantial burden on interstate commerce "on its face [and] in practical effect."[82]

REBA contends that this case does not fall into the first tier of the Dormant Commerce Clause analysis because jurisprudence proscribing the unauthorized practice of law "applies even-handedly against all non-attorneys, whether they reside in Massachusetts or they reside out-of-state."[83] This argument is flawed, however, because the majority of individuals who are licensed to practice law in Massachusetts would undoubtedly also be Massachusetts residents. As the First Circuit found in *Violet*, conferring the "practice of law" label on an activity "effectively bars out-of-staters from offering a commercial service within [the commonwealth's] borders and confers the right to provide that service— and to reap the associated economic benefit—upon a class largely composed of [Massachusetts] citizens."[84]

An overbroad definition of the practice of law would have a substantial effect on interstate commerce. It is highly unlikely that Massachusetts lawyers could provide the same services at the same expense to the customer as NREIS provides. Evidence for this proposition are "the savings normally attributable to large scale operation" and "the very existence of national companies like [NREIS]."[85] Moreover, REBA's definition of the practice of law would "deprive[ ] the citizens of [Massachusetts] of any benefits arising from competition."[86]

Because REBA's definition of the practice of law would substantially affect interstate commerce, it is sustainable only if "it promotes a legitimate state interest that cannot be achieved through any reasonable nondiscriminatory alternative."[87] REBA has not made such a showing. REBA is correct that "the States' interest in regulating the practice of law is 'substantial' and 'compelling.'"[88] But, as Massachusetts law implies and as REBA concedes, not every interconnected step of a real estate conveyance, by itself, constitutes the practice of law. REBA's legitimate state interest "not in the protection of the bar from competition, but in the protection of the public from being advised and represented in legal matters by incompetent and unreliable persons,"[89] therefore, would only apply to activities that actually qualify as the practice of law. Though the

the Dormant Commerce Clause analysis because the burden on interstate commerce would be "clearly excessive in relation to the putative local benefits." *Pike*, 397 U.S. at 137, 90 S.Ct. 844.

82. *Taylor*, 477 U.S. at 138, 106 S.Ct. 2440 (citation and quotation omitted).

83. Pl.'s Mem. Opp'n Defs.' Mot. Summ. J. 16, Mar. 9, 2009.

84. 807 F.2d at 290.

85. *Id.*

86. *Id.* (citing *H.P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525, 539, 69 S.Ct. 657, 93 L.Ed. 865 (1949) ("Our system, fostered by the Commerce Clause, is that .... every consumer may look to the free competition from every producing area in the Nation to protect him from exploitation by any.")).

87. *Cherry Hill*, 505 F.3d at 33.

88. Pl.'s Mem. Opp'n Defs.' Mot. Summ. J. 17, Mar. 9, 2009 (citing *Fla. Bar v. Went for It, Inc.*, 515 U.S. 618, 625, 115 S.Ct. 2371, 132 L.Ed.2d 541 (1995)).

89. *Loeb*, 52 N.E.2d at 31.

commonwealth's interest in "maintain[ing] the integrity and reliability of [its] recording system" is important, it could be protected through nondiscriminatory means that are less restrictive than requiring a Massachusetts law license. The requirements for admission to the Massachusetts bar are justifiably rigorous.[90] Imposition of these requirements is reserved for activities that themselves constitute the practice of law.

Accordingly, NREIS is entitled to a declaratory judgment that REBA's interpretation of the practice of law as encompassing all the interconnected steps of a real estate conveyance violates the Dormant Commerce Clause.[91] Because NREIS has satisfied the requirements for a permanent injunction,[92] NREIS is also entitled to an order enjoining REBA from enforcing its construction of the practice of law. NREIS has prevailed on the merits. NREIS would suffer severe economic hardships if REBA were able to enforce its interpretation of the practice of law so as to preclude NREIS from performing real estate conveyancing and title insurance services in Massachusetts.[93] NREIS's economic hardships would outweigh any harm that REBA would suffer in being precluded from enforcing its overbroad interpretation of the practice of law. And

the public interest would be best served by preserving competition in the markets for real estate conveyancing and title insurance services.

## IV. *Conclusion*

For the reasons stated above, NREIS's *Motion for Summary Judgment* and *Motion for Summary Judgment on Dormant Commerce Clause Counterclaim* are ALLOWED, and REBA's *Motion for Summary Judgment* is DENIED. REBA is enjoined from enforcing on NREIS its interpretation of the practice of law as encompassing (1) all the interconnected activities of a real estate conveyance and (2) the issuance of title insurance.

Each side shall bear its own costs.

AN ORDER HAS ISSUED.

## *ORDER OF JUDGMENT*

For the reasons set forth in the accompanying Memorandum, this court hereby orders that:

1. Defendants' *Motion for Summary Judgment* [# 59] and *Motion for Summary Judgment on Dormant Commerce Clause Counterclaim* [# 79] are ALLOWED.

---

90. For admission by examination, these requirements include the recommendation of a member of the bar, the equivalent of a high school diploma, the equivalent of a bachelor's degree, an American Bar Association- or a commonwealth-approved law license, successful completion of the Multistate Professional Responsibility Examination and the Massachusetts Bar Examination, and satisfaction of certain character and fitness requirements. S.J.C. Rule 3:01 (2000).

91. This holding addresses the constitutionality of REBA's interpretation of what constitutes the unauthorized practice of law under chapter 221, sections 46 and 46A of the Massachusetts General Laws, not the constitutionality of sections 46 and 46A themselves.

92. *See, e.g., Asociación de Educación Privada de P.R., Inc. v. García–Padilla,* 490 F.3d 1, 8 (1st Cir.2007) ("The standard for issuing a permanent injunction requires the district court to find that (1) plaintiffs prevail on the merits; (2) plaintiffs would suffer irreparable injury in the absence of injunctive relief; (3) the harm to plaintiffs would outweigh the harm the defendant would suffer from the imposition of an injunction; and (4) the public interest would not be adversely affected by an injunction.").

93. *See, e.g.,* Lammert Aff. 6 ("The financial loss to NREIS of the ability to provide settlement services and title insurance for Massachusetts transactions would be substantial.").

2. Plaintiff's *Motion for Summary Judgment* [# 69] is DENIED.

3. Defendants' *Motion for Leave to File* [# 96] is ALLOWED AS MOOT.

4. Plaintiff is enjoined from enforcing on Defendants its interpretation of the practice of law as encompassing (1) all the interconnected activities of a real estate conveyance and (2) the issuance of title insurance.

5. Each side shall bear its own costs.

IT IS SO ORDERED.