Michael **WERLE d/b/a Werle Consultants Family Mediation Center**, Plaintiff, Appellant,

v.

**RHODE ISLAND BAR ASSOCIATION**, et al., Defendants, Appellees.

No. 84–1549.

United States Court of Appeals, First Circuit.

Argued Dec. 3, 1984.

Decided Feb. 25, 1985.

Charles Greenwood, Providence, R.I., with whom McKenna, Greenwood & Feinstein, Providence, R.I., was on brief for plaintiff, appellant.

Daniel J. Murray, Providence, R.I., with whom Sean O. Coffey, Robert D. Fine and Letts, Quinn & Licht P.C., Providence, R.I., were on brief for defendant, appellee Rhode Island Bar Ass'n.

Richard B. Woolley, Asst. Atty. Gen., with whom Dennis J. Roberts, II, Atty. Gen., was on brief for defendants, appellees State of R.I. and Dennis J. Roberts, II.

Before COFFIN and BREYER, Circuit Judges, and MALETZ,\* Senior Judge.

---

\* Of the United States Court of International Trade, sitting by designation.

COFFIN, Circuit Judge.

The questions involved in this case are whether appellees are state actors and whether they enjoy immunity from liability under 42 U.S.C. § 1983. Appellant, Dr. Michael Werle, claims that appellees, the Rhode Island Bar Association and the members of its former Committee on the Unauthorized Practice of Law, violated his First and Fourteenth Amendment rights by sending him a letter requesting that he discontinue his divorce mediation business on the grounds that it involved him in the unauthorized practice of law. After conducting a two-day, non-jury trial, the district court determined that appellees were not state actors acting under the color of state law and dismissed Dr. Werle's case for failure to state a claim. We affirm the dismissal on somewhat different grounds.

The facts of the case are as follows. At the end of January 1981, appellee Michael Margolis, Chairman of the Bar Association's Committee on the Unauthorized Practice of Law (the "Committee"), received a copy of a brochure from Dr. Werle's business, Werle Consultants Family Mediation Center (the "Center"). The brochure, which was sent to a number of lawyers throughout Rhode Island, described the Center as a place where cooperative resolution of marital problems could be undertaken. The Center would provide, among other things, "impartial mediation and arbitration service for divorcing couples", assisting them in reaching agreement "upon division of property, support and child custody". Dr. Werle, described in the brochure as a psychologist and associate professor of psychology experienced in family mediation, was the only mediation "consultant" named in the brochure, though it also referred generally to an "advisory attorney", who was to be "called upon to provide legal and tax advice" and to draft formal settlement agreements. A couple utilizing the Center would make a deposit which was sufficient to pay for ten hours of mediation time and three hours of the advisory attorney's time.[1]

Upon receiving the brochure, Mr. Margolis compared it to the prohibitions contained in Rhode Island's unauthorized practice of law statute, Chapter 11–27 of Rhode Island's General Laws. Concluding that the brochure described practices which were in violation of Chapter 11–27, Margolis contacted all but two of the eleven or so other members of the Committee, discussed the brochure's contents, and received their unanimous concurrence that the brochure and the practice described therein probably violated Rhode Island's laws and that Dr. Werle should be informed of that fact. Margolis contacted Dr. Werle by phone and also met with him to discuss the problem. During the meeting, Margolis gave Dr. Werle a copy of the statutes allegedly being violated and indicated what he thought some of the violations were. Margolis later testified that the violations he had in mind, most, if not all of which, he identified for Dr. Werle, included the tendering of legal advice, the legal representation of an individual in a civil dispute, the drafting of legal documents, the collection of what were in effect legal fees, the advertising of legal services, and the advertising of assistance in divorce proceedings.[2] Although the

---

1. At trial, Dr. Werle confirmed that at the time of the brochure's distribution, he was the only "consultant" or mediator at the Center and that he was still in the process of lining up individuals who would be willing and qualified to serve as advisory attorneys.

2. While a number of provisions under chapter 11–27 are involved here, it is enough for our purposes to quote from only three. First, section 11–27–2 specifies as one type of unauthorized practice of law "[t]he giving or tendering to another person for a consideration, direct or indirect, of any advice or counsel pertaining to a law question...." R.I.Gen.Laws § 11–27–

2(2). Second, section 11–27–10 states that no one other than a member of the bar "shall ... advertise in any manner that he ... will furnish or agree to furnish legal services or advice or the services of an attorney at law...." R.I.Gen. Laws § 11–27–10. Finally, section 11–27–20 states that anyone who "distributes ... any circular, pamphlet, card, handbill, advertisement, ... or notice of any kind offering to procure or to aid in procuring any divorce ... shall be fined not exceeding one hundred dollars ($100)." R.I.Gen.Laws § 11–27–20. Whether Margolis discussed with Dr. Werle all of these provisions specifically is not important. It was

two men also discussed the possibility of Dr. Werle meeting with the whole Committee at its next meeting, Dr. Werle decided not to exercise that option when he learned that the meeting would not be held until after a cease and desist letter was to be sent to him.

Also, according to the trial testimony of Dr. Werle but contrary to that of Margolis, the latter either stated, or allowed Dr. Werle to believe, the following: that the Committee would recommend prosecution of Dr. Werle if he did not cease and desist, that the Committee's recommendations on such matters were always adopted by the Bar Association's Executive Committee, that the Executive Committee always forwarded the recommendations to the Attorney General of Rhode Island, and that the Attorney General always responded by commencing prosecution against the unauthorized practitioner. Whatever may have been said to Dr. Werle at the time, testimony at the trial supported the first three claims but not the fourth; the Attorney General had not commenced a prosecution for the unauthorized practice of law in approximately ten years. Apparently unaware of this fact, Dr. Werle left the meeting believing his only choice was either to discontinue his business until he determined whether it was legal or to face criminal prosecution by the Attorney General. On February 4, 1981, Margolis sent a letter on behalf of the Committee, requesting Dr. Werle to cease and desist from the unauthorized practice of law.

On February 9, 1981, Dr. Werle responded to Margolis by letter. Dr. Werle wrote, "I have concluded that there is a possibility that I would be in technical violation of the law if I were to continue offering divorce mediation through my psychological practice under the terms of the brochure that outlines the procedure." He added that he did not think that he was involved in the practice of law but that he would comply with the Committee's request until he could ascertain whether he was. Because Werle indicated he would comply with the request, the Committee took no further action on the matter.[3]

Seven months passed before Dr. Werle, in September of 1981, tried to obtain an opinion from the Attorney General as to whether the Center's mediation practice constituted a violation of the law. The Attorney General, however, refused to issue an opinion. Dr. Werle commenced this section 1983 action four months later, in January of 1982, naming as defendants not only appellees but also the Attorney General and the State of Rhode Island.

To prove his claim against each defendant, Dr. Werle had to establish that the defendant was a state actor acting under the color of state law and that the defendant had deprived Dr. Werle of a right secured by the Constitution and laws of the United States. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150–52, 90 S.Ct. 1598, 1604–06, 26 L.Ed.2d 142 (1970). The district court concluded after trial, however, that the case against the Bar Association defendants should be dismissed because they were not state actors. The case against the Attorney General and Rhode Island was also dismissed, but for reasons that need not concern us here since no appeal has been taken with respect to those two parties.

On appeal, Dr. Werle concedes that the injunctive and declarative aspects of his claim have been mooted by amendments made in 1982 to R.I.Gen.Laws § 11–27–19 that resulted in the permanent dissolution

---

enough that the laws were on the books for Dr. Werle or his counsel to read and that Margolis, according to his uncontradicted testimony, gave Dr. Werle copies of most, if not all, of the relevant provisions.

**3.** The decision to drop the matter, as well as all the previous steps taken by Margolis and the

Committee from the time the brochure was received, comported with the Committee's standard operating procedures. Even the step of conferring with the members by phone, rather than waiting for the next regularly scheduled meeting, was a procedure that had been employed in the past.

of the Committee.[4] He pursues his remaining damages claim, arguing that, contrary to the district court's findings, appellees were state actors serving a public function and exercising authority delegated to them by Rhode Island's legislature and judiciary.

Because of the nature of Dr. Werle's allegations and the evidence adduced at trial, however, we need not address this claim. On the one hand, if the district court was correct in concluding that appellees were not state actors, then it was also correct in dismissing Dr. Werle's suit for failure to state a claim. On the other hand, if the district court was wrong, i.e., even if we assume that appellees were state actors for the very reasons set forth by Dr. Werle, the evidence compels us to conclude that they enjoyed either absolute or qualified immunity from damages liability under section 1983. As the Supreme Court noted in *Harlow v. Fitzgerald,* 457 U.S. 800, 810–19, 102 S.Ct. 2727, 2734–39, 73 L.Ed.2d 396 (1982), prosecutors, as well as judges and legislators, acting within the scope of their official duties enjoy absolute immunity, and other government officials are accorded the lesser protection of qualified immunity. In accord with this distinction between the types of officials and the immunity they enjoy, we consider first the possibility that appellees served as "public" prosecutors and second the possibility that they were acting as "public" investigators.

Throughout this litigation, Dr. Werle has suggested that a chilling effect upon the exercise of his constitutional rights was caused by the threat of a complaint brought either by the Bar Association through its members or by the Attorney General upon the Bar Association's recommendation. Dr. Werle speaks of the Committee as if it were a surrogate for the Attorney General, bringing unauthorized

practice of law claims and enforcing the relevant provisions of the Rhode Island statutes. The problem with this argument is that it cuts both ways: as much as it points to the conclusion that appellees are state actors, it also points to the conclusion that they enjoy the same absolute immunity that prosecutors enjoy.

■ The Supreme Court has held that state prosecutors enjoy the same absolute immunity from section 1983 liability that they enjoy under the common law.[5] *Imbler v. Pachtman,* 424 U.S. 409, 427, 96 S.Ct. 984, 993, 47 L.Ed.2d 128 (1976). In addition, precedent and policy argue that the same privilege should be extended to those authorized in particular types of cases to serve in effect as "public" prosecutors. *See, e.g., Slavin v. Curry,* 574 F.2d 1256, 1266 (5th Cir.) (members of bar association's grievance committee held to enjoy absolute immunity from damages liability under section 1983 because they were performing as agents of the state's judicial department), *modified on other grounds,* 583 F.2d 779 (5th Cir.1978); *Schneider v. Colegio de Abogados de Puerto Rico,* 546 F.Supp. 1251, 1264 (D.P.R.1982) (damages claim fails because of prosecutorial immunity enjoyed by bar association); *Hoke v. Board of Medical Examiners of North Carolina,* 445 F.Supp. 1313, 1315–16 (W.D. N.C.1978) (members of board absolutely immune from liability for damages where their decision to prefer charges against certain physicians was found analagous to state prosecutor's initiation of criminal proceedings). Thus, if we assume, as Dr. Werle argues, that appellees had clear authority to bring a civil claim or to take steps that led directly to a criminal prosecution by the Attorney General and that it was the threat of prosecution that chilled

---

**4.** Those amendments created a new unauthorized practice of law committee appointed by, and directly accountable to, the Supreme Court of Rhode Island, not the Bar Association.

**5.** As the Supreme Court has implied, "absolute" is really too strong a word. Prosecutors can be held criminally liable for wilfully violating someone's constitutional rights and are amena-

ble to professional discipline by their peers. *Imbler v. Pachtman,* 424 U.S. 409, 428–29, 96 S.Ct. 984, 994, 47 L.Ed.2d 128 (1976). In addition, as the limiting language of *Imbler* makes clear, a prosecutor enjoys immunity from civil suit only with respect to actions taken within the scope of his official duties. *Id.* at 420, 96 S.Ct. at 990.

his constitutional rights, then we are compelled to conclude that appellees were absolutely immune from damages liability under section 1983 because the conduct that was feared would have involved appellees in doing nothing more than properly fulfilling their roles as "public" prosecutors.

If, in the alternative, we assume that the role appellees played was more like that of an investigator than that of a prosecutor, then it is a lesser, qualified immunity that they enjoyed. Even in the case of a prosecutor, it has been held that the quasi-judicial, or absolute, immunity that is enjoyed as an advocate for the state in a judicial forum should not be extended to cover whatever tangential, investigative or administrative functions the prosecutor may also perform. *See, e.g., McSurely v. McClellan,* 697 F.2d 309, 318–19 (D.C.Cir. 1982). When performing these secondary functions, the prosecutor is entitled only to that lesser immunity which is accorded administrative and investigative officials. *Id.*

Even under this qualified immunity standard, though, we find that appellees are protected from liability. In *Harlow v. Fitzgerald,* 457 U.S. at 818, 102 S.Ct. at 2739, the Supreme Court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Applying the *Harlow* standard to this case,[6] we conclude that as long as a reasonable person would not have known that appellees' conduct violated Dr. Werle's rights, appellees would be entitled to qualified immunity.

The evidence demonstrates rather clearly that no reasonable person would have known that appellees' conduct constituted such a violation. As the district court noted in its opinion, "[t]here is no evidence of a bad faith threat of prosecution in the

instant case. One could in good faith, upon reading [Dr. Werle's] brochure in conjunction with Title 11, Chapter 27 of Rhode Island General Laws, suspect that [Dr. Werle's] proposed activities would constitute the unauthorized practice of law." This is the same conclusion that Dr. Werle came to in his letter to Margolis, admitting the possibility that the procedure outlined in the brochure was in "technical violation of the law".

Indeed, a reasonable person would almost certainly have concluded that the brochure on its face showed Dr. Werle and the Center to be in violation of at least those provisions of Rhode Island law which prohibit a non-attorney from advertising the services of an attorney and which prohibit anyone from advertising assistance in the procurement of a divorce. *See supra* note 2, at 196. In addition, the testimony of Dr. Werle at trial would do little to dissuade a reasonable person from believing that there was a significant probability that Dr. Werle's services, as advertised in the brochure, would involve him in advising couples on legal questions concerning custody, maintenance, and property distribution. Although Dr. Werle told Margolis at their meeting that only the "advisory attorney" would give legal advice, the fact that the role of this attorney was so vaguely defined in Dr. Werle's own mind (apparently the attorney's client was to be either the couple or the mediation process itself, not either of the spouses individually) raises significant doubts that a proper separation of the legal and psychological aspects of the counselling services had yet been worked out.

Furthermore, Dr. Werle has pointed to no authority that even suggests, let alone establishes, that the Committee might be violating his constitutional rights by enforcing the express provisions of Rhode

---

**6.** We note that there is no evidence to suggest that appellees *actually* knew or thought their conduct violated Dr. Werle's constitutional or statutory rights. *See Harlow v. Fitzgerald,* 457 U.S. at 821, 102 S.Ct. at 2740 (Brennan, J., concurring) (noting that one "who *actually knows* that he [is] violating the law" would not be protected under the qualified immunity standard).

**200**

Island's statutes.[7] Indeed, to the extent that the Supreme Court of Rhode Island has considered the validity of certain of the unauthorized practice of law provisions, or, more accurately, their predecessor provisions, the court has held them to be constitutional enactments designed to aid the court in the exercise of its authority to regulate and supervise the practice of law. *Rhode Island Bar Association v. Lesser,* 68 R.I. 14, 16–17, 26 A.2d 6, 7 (1942) (citing *Rhode Island Bar Association v. Automobile Service Association,* 55 R.I. 122, 179 A. 139 (1935); *Creditors' Service Corp. v. Cummings,* 57 R.I. 291, 190 A. 2 (1937)).

For all of these reasons, we hold that Margolis' conduct and that of the other appellees fell within the scope of the immunity, whether absolute or qualified, that they must have enjoyed if they were the state actors that Dr. Werle claims they were.

*Accordingly, the decision of the district court is affirmed.*

---

**7.** As for the argument that Margolis misrepresented that the Attorney General always prosecutes a matter referred from the Committee, we merely observe that, given a reasonable basis for suspecting punishable violations of law, Margolis would not lose his immunity by virtue of any misrepresentations about the certainty of punishment.