# United States Court of Appeals
## For the First Circuit

No. 09-1809

THE REAL ESTATE BAR ASSOCIATION FOR MASSACHUSETTS, INC.,

Plaintiff, Appellant,

v.

NATIONAL REAL ESTATE INFORMATION SERVICES;
NATIONAL REAL ESTATE INFORMATION SERVICES, INC.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Joseph L. Tauro, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Howard, Circuit Judges.

Douglas W. Salvesen with whom Anthony B. Fioravanti, and
Yurko, Salvesen & Remz, P.C. were on brief for the appellant.
Jonathan M. Albano, Brandon L. Bigelow, Julie S. Palmer, and
Bingham McCutchen LLP on brief for the Boston Bar Association,
amicus curiae.
Robert J. Muldoon, Jr., Jessica Gray Kelly, and Sherin and
Lodgen LLP on brief for the Massachusetts Bar Association, amicus
curiae.
Michael D. Ricciuti with whom Irene C. Freidel, Michael
DeMarco, Robert W. Sparkes, III, and K&L Gates LLP were on brief
for the appellees.

June 21, 2010

**LYNCH**, **Chief Judge**.  In November 2006 the Real Estate Bar Association for Massachusetts, Inc. ("REBA") brought suit in state court against National Real Estate Information Services, Inc., later also naming National Real Estate Information Services (collectively "NREIS"), as REBA was given standing to do as a bar association under Mass. Gen. Laws ch. 221, § 46B.  REBA sought declaratory and injunctive relief, claiming that certain activities NREIS engaged in constituted the unauthorized practice of law under Mass. Gen. Laws ch. 221, §§ 46, 46A.  Those activities stemmed from NREIS's provision of real estate settlement services and its business as a title insurance agent.

NREIS removed the case to federal district court on diversity grounds.  The district court proved inhospitable to REBA's claims.  Although the Supreme Judicial Court of Massachusetts ("SJC") had never opined on these modern conveyancing practices by nonlawyers and had last addressed the general topic of conveyancing in 1935, the district court construed the sparse state case law and declared the practices at issue did not constitute the unauthorized practice of law.  The district court entered judgment against REBA on its suit.  See Real Estate Bar Ass'n for Mass., Inc. v. Nat'l Real Estate Info. Servs. (REBA I), 609 F. Supp. 2d 135, 143-44 (D. Mass. 2009).

The district court went further and issued injunctive and declaratory relief against the bar association, finding for NREIS

- 2 -

on its purported counterclaim, brought under 42 U.S.C. § 1983, that REBA's very bringing of the lawsuit in state court had violated the dormant Commerce Clause. Id. at 147. The court then ordered REBA to pay attorney's fees and costs in the amount of $904,076.17 to NREIS as a prevailing party under 42 U.S.C. § 1988. Real Estate Bar Ass'n for Mass., Inc. v. Nat'l Real Estate Info. Servs. (REBA II), 642 F. Supp. 2d 58, 73 (D. Mass. 2009).

REBA appeals from the district court's summary judgment rulings and is supported by amicus briefs from two major bar associations in Massachusetts. The Massachusetts Bar Association argues the district court was wrong in finding there was no violation of the unauthorized-practice-of-law statute. The Boston Bar Association argues that the issuance of the injunction and declaratory relief against REBA for having brought suit violated the First Amendment. REBA also requests this court to certify to the SJC the unauthorized-practice-of-law question that is the subject of its suit and to reverse all relief against it on the counterclaim.

We vacate the district court's judgment against REBA on its unauthorized-practice-of-law claim. In Massachusetts, the state judicial branch, and the SJC in particular, is solely responsible for defining what is the practice of law. See Superadio Ltd. P'ship v. Winstar Radio Prods., LLC, 844 N.E.2d 246, 250 (Mass. 2006) ("[T]he judicial department is necessarily the

- 3 -

sole arbiter of what constitutes the practice of law. . . .") (quoting Lowell Bar Ass'n v. Loeb, 52 N.E.2d 27, 31 (Mass. 1943) (internal quotation marks omitted); see also In re Opinion of the Justices, 194 N.E. 313, 316 (Mass. 1935). Because there is no controlling precedent from the SJC which addresses whether NREIS's various activities constitute the unauthorized practice of law and because the answer to that question is unclear and may be determinative of this litigation, we certify that question to the SJC. See Mass. S.J.C. Rule 1:03; Ropes & Gray LLP v. Jalbert (In re Engage, Inc.), 544 F.3d 50, 52 (1st Cir. 2008).

We also reverse the district court's decision on NREIS's dormant Commerce Clause counterclaim. Without reaching the question of whether a defendant may assert as a counterclaim that the plaintiff is relying on an unconstitutional statute, we hold that issuance of relief here was improper. REBA is not a state actor, NREIS has not stated a dormant Commerce Clause claim against REBA, and REBA's bringing of its suit against NREIS under Mass. Gen. Laws ch. 221, § 46B is protected by the First Amendment of the United States Constitution.

I.

We present the essential facts giving rise to this controversy which, unless otherwise indicated, are uncontested.

The underlying legal dispute in this case is whether the activities required to transfer title in real estate and to issue

- 4 -

insurance policies on the transfer of title in whole or in part constitute the practice of law. While the parties disagree as to what specific activities are required to transfer title, they generally agree that these transactions involve an inspection of the seller's legal title to the real estate before the transfer and, if necessary, resolution of any flaws in the seller's title to the property; execution of legal documents and the exchange of those documents and promised consideration at a "closing;" and recording of the legal documents at the registry of deeds.

Title insurance policies are issued at the time of closing by title insurance agents, who are independent of the title insurance company, either to insure the owner or purchaser's interest in the real estate or to insure the interest of the mortgage lender. These policies incorporate an inspection of the title at the time of the closing, and any unresolved defects, liens, or encumbrances on the property may be identified as exceptions to the policy.

REBA, formerly known as the Massachusetts Conveyancers' Association, Inc., is a 150-year-old bar association with a membership of approximately 3,000 Massachusetts real estate attorneys. REBA's website describes its members as representing "lenders, buyers, sellers, owners, landlords and tenants in every real estate practice area and specialty including resolving title issues and title insurance, commercial leasing, transactional

- 5 -

matters for both residential and commercial property, affordable housing, environmental, zoning, permitting and land use, alternative dispute resolution and litigation." Real Estate Bar Association of Massachusetts, About REBA, http://www.reba.net/page/about (last visited June 3, 2010). It is not an integrated bar,[1] nor has the SJC delegated to it the resolution of questions about what is the unauthorized practice of law.

NREIS is a Pennsylvania-based corporation that provides real estate closing (which NREIS also calls "vendor management") and title insurance-related services for mortgage lenders throughout the country. It is a member of the Title/Appraisal Vendor Management Association ("TAVMA"), a national trade association of companies providing real estate closing services. NREIS's customers are mostly national mortgage loan companies. NREIS provides these companies with centralized back-office operations in support of their lending transactions. Aside from third-party lawyers with whom NREIS contracts to attend closings, NREIS does not employ any lawyers to provide its services. NREIS asserts that it does not hold itself out to its customers as

---

[1] "An 'integrated' bar is an association of attorneys in which membership and dues are required as a condition of practicing law in the jurisdiction." Schneider v. Colegio de Abogados de Puerto Rico, 917 F.2d 620, 623 n.1 (1st Cir. 1990).

practicing law or having the ability or qualifications to practice law.

REBA has a history of attempting to curtail what it calls "witness" or "notary" real estate closings, in which all of the documents required to complete a real estate transaction are compiled by nonlawyer third parties and an attorney only witnesses the closing of the transaction.

REBA believes that the essential tasks involved in a real estate transaction are an "interconnected series of activities that must be performed in order to convey the various legal interests in . . . real estate," and each of the activities must be overseen, if not personally conducted, by an attorney. REBA's position is that some mechanical tasks, such as creating title abstracts, may be delegated to nonattorneys, so long as "the lawyer maintains a direct relationship with the client, supervises the delegated work, and has responsibility for the work product." REBA also alleges that the issuing of title insurance policies is the practice of law because title insurance policies are issued based on the examination and legal analysis of the seller's legal title in the property, which REBA asserts must be conducted by an attorney.

Consistent with its views, REBA has opposed bills in the legislature that would formally recognize witness closings in Massachusetts and has tried to persuade affiliated bar associations to petition the SJC to adopt, through rulemaking, REBA's own

definition of the practice of law into the Massachusetts Rules of Professional Conduct. REBA also filed and won two lawsuits in 1993 and 2001 in Massachusetts Superior Court to enjoin local companies, not run by lawyers, from providing real estate settlement services. See Mass. Conveyancers Assoc., Inc. v. Colonial Title & Escrow, Inc., No. Civ. 96-2746-C, 2001 WL 669280 (Mass. Super. Ct. 2001) (finding the defendant corporation engaged in unauthorized practice of law and enjoining the defendant from, inter alia, evaluating title and closing agreements, drafting legal documents, explaining legal documents at closing, and issuing title insurance policies based on the defendant's title evaluations); Mass. Assoc. of Bank Counsel, Inc. v. Closings, LTD, No. 903053C, 1993 WL 818916, at *2 (Mass. Super. Ct. 1993) (granting default judgment, finding defendant engaged in unauthorized practice of law and enjoining defendant from drafting instruments related to real estate and giving advice in connection with real estate closings, as well as "handling all aspects of residential real estate closings"). Neither decision was appealed to the SJC. This suit, REBA hoped, would ultimately result in an authoritative judgment by the SJC on these continuing issues.

NREIS both provides real estate closing services and acts as a title insurance agent in Massachusetts. In helping to coordinate a real estate closing, NREIS, at the lender's request, may provide any of the following services in Massachusetts: (1)

- 8 -

obtaining valuations of a property and third-party reports such as tax certifications and flood reports; (2) obtaining title searches from a third-party vendor; (3) drafting the settlement statement; (4) scheduling the closing with a Massachusetts attorney who will attend and transmitting the lender's documents to that attorney for the closing; (5) disbursing settlement funds, held by NREIS in its own bank account until the mortgage has been executed by a borrower; and (6) ensuring that the transaction documents were completed properly and properly recorded. NREIS describes these activities as administrative and not legal.

The title search is conducted by a third-party vendor under contract to NREIS. One of those companies, Connelly Title, itself does not employ any lawyers and purports only to provide title abstracting services and no legal analysis. NREIS does not conduct its own review of the title abstract provided by Connelly Title.

When a lender-customer requests that NREIS provide a deed for a transaction, NREIS contracts with another third-party vendor, a Las Vegas, Nevada-based company. That company is not a law firm.

As to the closings themselves, NREIS schedules the closing to be attended by a Massachusetts attorney, selected from a list it maintains of around seventy-four lawyers. Before the closing, NREIS sends the relevant documents to the attorney. NREIS

does not provide any instructions as to how the attorney should conduct the closing.

NREIS also acts as a title insurance agent on its transactions when requested. When acting as an agent, NREIS does not review the status of the real estate title. It prepares the title insurance policy based on a title abstract provided by a third-party vendor, simply copying the contents of the abstract into the policy documents. NREIS issues polices for several companies that write title insurance in Massachusetts, including Stewart Title, First American, Ticor Title, and Old Republic.

## II.

REBA filed its original complaint on November 6, 2006, and its amended complaint on February 2, 2007, in Suffolk County Superior Court, under Mass. Gen. Laws ch. 221, §§ 46, 46A, and 46B, seeking declaratory judgment and an injunction against NREIS's activities in Massachusetts. The statute, at § 46 states that aside from corporations established to practice law, "[n]o corporation or association shall practice or appear as an attorney for any person other than itself" and explicitly prohibits corporations from drafting legal documents or giving legal advice not relating to their own businesses, or holding themselves out to the public as being able to practice law. Id. § 46. Section 46A provides in pertinent part that "[n]o individual, other than a member, in good standing, of the bar of this commonwealth shall

practice law, or, by word, sign, letter, advertisement or otherwise, hold himself out as authorized, entitled, competent, qualified or able to practice law." Id. § 46A.

Section 46B provides concurrent jurisdiction to the SJC and Massachusetts superior courts to restrain violations of §§ 46, 46A, and 46C "upon petition of any bar association within the commonwealth, or of three or more members of the bar of the commonwealth, or of the attorney general, or of the district attorney within his district." Id. § 46B.

REBA's amended complaint asserted there was a controversy as to "whether Massachusetts law permits a non-lawyer who is not a party to a real estate transaction to control and supervise the conveyance of a legal interest in . . . real property . . . where the only participation of an attorney is restricted to notarizing documents at the settlement of the transaction." It sought declaratory judgment that NREIS was engaged in the unauthorized practice of law. The complaint further stated there was disagreement as to whether NREIS could legally contract with Massachusetts attorneys to provide legal services to third parties.

REBA sought declaratory judgment that "an attorney retained to perform a conveyance of a legal interest in Massachusetts real property on behalf of a bank or lender must have a direct attorney-client relationship with the bank or mortgage lender client, and that [NREIS is] not permitted to interpose

[itself] into that attorney-client relationship or otherwise control it." REBA also sought relief in the form of a preliminary and permanent injunction against NREIS "engaging in any of the activities which constitute a conveyance of real property unless they are acting under the supervision or control of a Massachusetts attorney." REBA did not seek monetary damages.

On February 6, 2007, NREIS removed the action, under 28 U.S.C. § 1441, to the federal district court in Massachusetts on diversity grounds. REBA agreed to dismiss from the original case the one nondiverse defendant, a Massachusetts attorney.

At the same time, NREIS filed in the federal district court an answer to REBA's complaint denying REBA's allegations and asserting what it styled as a counterclaim under 42 U.S.C. § 1983. The counterclaim sought (1) declaratory judgment that Mass. Gen. Laws ch. 221, § 46A, "if interpreted against NREIS as plaintiff contends, violates the Dormant Commerce Clause of the U.S. Constitution," (2) an injunction against REBA "preventing NREIS from engaging in interstate commerce free from restrictive state action," and (3) attorney's fees and costs.

III.

A.     <u>Certification of REBA's Claim to the SJC</u>

We first vacate the district court's entry of judgment against REBA on its unauthorized-practice-of-law claim. The district court interpreted state law and held that NREIS's

activities do not constitute the unauthorized practice of law under Mass. Gen. Laws ch. 221, §§ 46, 46A. We certify questions regarding REBA's claim to the SJC.

The Massachusetts certification rule provides for certification "if there are involved in any proceeding before [the federal court] questions of law of this State which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decision of this court." Mass. S.J.C. R. 1:03 § 1; see also Hundley v. Marsh (In re Hundley), 603 F.3d 95, 98 (1st Cir. 2010) ("When Massachusetts law is at issue, the SJC has provided that we may certify questions to it in cases where we 'find[] no controlling precedent, and where the questions may be determinative of the pending cause of action.'") (quoting In re Engage, Inc., 544 F.3d at 52) (alternation in original).

The conditions for certification are met. Should the SJC decide that the activities NREIS has engaged in do not constitute the unauthorized practice of law, that "may be determinative" of this case.

There is no controlling precedent from the SJC. A 1935 opinion of the SJC, In re Opinion of the Justices, notes that the practice of law "embraces conveyancing." 194 N.E. at 317. But there is no controlling precedent that establishes a definition for "conveyancing" or the extent of activities that constitute

- 13 -

conveyancing. The district court correctly noted that there was no SJC precedent "directly on point" on what activities constituted conveyancing and that "the SJC has not explicitly addressed whether the practice of law embraces all the interconnected activities of a real estate conveyance." REBA I, 609 F. Supp. 2d at 142-43. The district court was also correct to note that state law provided little "guidance as to the level of involvement an attorney must have" in the conveyancing activities. Id. at 143.

Of course, "even in the absence of controlling precedent, certification would be inappropriate where state law is sufficiently clear to allow us to predict its course." In re Engage, Inc., 544 F.3d at 53. This is not such a case. The district court's conclusion that the statute has not been violated is at least in tension with the view of the two state trial court determinations in Massachusetts, and perhaps one determination by a single SJC justice. REBA cites a decision by a single justice in a disciplinary case, In re Eric Levine, No. BD-2002-075, 2004 WL 5214985 (Mass. St. Bar Disp. Bd. 2004), which found a suspended attorney had engaged in the practice of law when the attorney continued to provide closing services following his suspension, even though a licensed attorney attended the actual closings. Id. at *2. These opinions, as the district court recognized, are not opinions of the full SJC and so are not dispositive. REBA I, 609 F. Supp. 2d at 142.

- 14 -

NREIS, in turn, relies on several SJC opinions holding that certain other economic activities, such as filling in tax forms, preparing a reaffirmation form in a bankruptcy proceeding, and conducting research on real estate titles in the registry of deeds and then reporting and making recommendations to a lawyer based on the research, did not constitute the practice of law. See In re Chimko, 831 N.E.2d 316, 321-22 (Mass. 2005); Goldblatt v. Corp. Counsel of Boston, 277 N.E.2d 273, 277 & n.4 (Mass. 1971); Lowell Bar Ass'n, 52 N.E.2d at 34. None of those authorities is analogous to this case, and NREIS itself acknowledges that they do not directly address REBA's claim.

Unlike other certification cases in which there is mere risk of error by the federal courts in ruling on state law issues, see Boston Gas Co. v. Century Indem. Co., 529 F.3d 8, 13 (1st Cir. 2008), here there are even stronger reasons to commit these questions to the SJC in the first instance. Apart from the lack of certainty in state law, it is especially appropriate to certify this question to the SJC because whether NREIS's various activities here constitute the unauthorized practice of law raises serious policy concerns regarding the practice of law that will certainly impact future cases. Such policy judgments are best left to the SJC, which is responsible for defining the practice of law in Massachusetts. See In re Engage, Inc., 544 F.3d at 57; Boston Gas Co., 529 F.3d at 14-15.

- 15 -

Indeed, the interests of federalism are best served by certification. We have been particularly mindful of those concerns and have certified before when the issues concern the SJC's control over the practice of law. E.g., In re Engage, Inc., 544 F.3d at 57-58 (certifying, inter alia, the question of whether a state attorney lien statute applies to "patents and patent applications"). Federal law recognizes that states have "an especially great" interest in regulating the practice of law. Goldfarb v. Va. State Bar, 421 U.S. 773, 792 (1975) ("The interest of the States in regulating lawyers is especially great since lawyers are essential to the primary governmental function of administering justice . . . ."). The authority to regulate the practice of law has been left to the states "[s]ince the founding of the Republic." Leis v. Flynt, 439 U.S. 438, 442 (1979).[2]

---

[2]    We note that REBA sought to obtain a ruling in state court and that its efforts were thwarted by the removal of the case to the federal court. REBA did not choose to have the state law question decided by a federal court. NREIS made that decision through removal. The existence of diversity sufficient to permit the exercise of federal jurisdiction is an insufficient reason to deprive the SJC of its normal role as arbiter of what constitutes the practice of law in Massachusetts.

NREIS argues that REBA failed to move for certification to the SJC in the district court and for that reason we must have a compelling reason to certify. This factor is one of many to be considered in the exercise of our discretion. See Boston Car Co., Inc. v. Acura Auto. Div., Am. Honda Motor Co., Inc., 971 F.2d 811, 817 n.3 (1st Cir. 1992). This court has discretion to certify questions to the SJC when a party fails to move for certification in the district court, or to do so sua sponte. Hundley, 603 F.3d at 98; In re Engage, Inc., 554 F.3d at 57 n.10; Me. Drilling and Blasting, Inc. v. Ins. Co. of N. Am., 34 F.3d 1, 3 (1st Cir. 1994). The arguments for certification in this case are compelling.

- 16 -

There are also strong federalism interests that are furthered by providing the state courts with the opportunity to decide on underlying unsettled questions of state law. Cf. Growe v. Emison, 507 U.S. 25, 32 (1993) (noting circumstances in which "principles of federalism and comity dictate" deferring to state courts, such as "when the federal action raises difficult questions of state law bearing on important matters of state policy").

We therefore certify to the Massachusetts SJC the following questions:

1. Whether NREIS's activities, either in whole or in part, based on the record in this case and as described in the parties' filings, constitute the unauthorized practice of law in violation of Mass. Gen. Laws ch. 221, §§ 46 et seq.

2. Whether NREIS's activities, in contracting with Massachusetts attorneys to attend closings, violate Mass. Gen. Laws ch. 221, §§ 46 et seq.

We would welcome the advice of the SJC on any other relevant aspect of Massachusetts law which it believes would aid in the proper resolution of the issues.

---

NREIS also argues that REBA raises a theory in its petition for certification that REBA did not present to the district court: that the individual steps in a real estate transaction, and not just the process as a whole, constitute the practice of law. We decline to reach this question.

B.        Issuance of Injunctive and Declaratory Relief against REBA under § 1983 for Violation of the Dormant Commerce Clause Was Error

The district court also granted summary judgment on NREIS's counterclaim and issued injunctive and declaratory relief against REBA.[3]  Our review of the district court's grant of summary judgment is de novo.  Family Winemakers of Cal. v. Jenkins, 592 F.3d 1, 5 (1st Cir. 2009).  "We review a district court's grant of a permanent injunction for abuse of discretion; we review its underlying conclusions of law de novo and any factual findings for clear error."  Shell Co. (P.R.), Ltd. v. Los Frailes Serv. Station, Inc., 605 F.3d 10, 19 (1st Cir. 2010).

We bypass the question of whether a defendant may assert as a counterclaim that a statute if construed to apply would violate the dormant Commerce Clause.[4]  Whatever the procedural vehicle, the theory of the counterclaim as to which injunctive relief was granted is not viable for a number of reasons.

_____

[3]     Based upon these findings, the court concluded that NREIS was a prevailing party in a § 1983 action and awarded attorney's fees and costs of $904,076.17 against REBA under § 1988.  Because we vacate the findings of liability on all theories, NREIS cannot be a prevailing party, and it is not entitled to relief.

[4]     The parties have not briefed this question, and so we vacate the district court's holding on other grounds.  We note, however, that the assertion that a statute violates the dormant Commerce Clause can be and usually is raised as an affirmative defense, as NREIS also did in this case.  See, e.g., Sadler v. NCR Corp., 928 F.2d 48, 53-56 (2d Cir. 1991).

We start with the ambiguity in NREIS's theory, which provided context for the odd configuration of arguments before the district court. The counterclaim stated what appeared to be a conventional defense: that if REBA's interpretation of the state statute were adopted by the court then the statute, as so interpreted (presumably by a court), would violate the dormant Commerce Clause.

The counterclaim, however, also alleged that "[t]he Amended Complaint by plaintiff and its interpretation of [Mass. Gen. Laws. ch. 221, § 46A], is an act of economic protectionism by Massachusetts lawyers against out-of-state competition for settlement services." This could be read to allege an unusual theory, that the filing of the complaint alleging unauthorized practice was itself a violation of the dormant Commerce Clause.

REBA read the counterclaim to embody the first argument. It argued to the district court that the statute, if interpreted by a court to prohibit NREIS's activities, would not violate the dormant Commerce Clause, thus interpreting the theory as a conventional defense. Under that argument, if the court did not interpret the statute to apply to NREIS's activities, then the Commerce Clause claim would be hypothetical and not be reached. NREIS, however, argued it was entitled to an injunction and declaratory relief against REBA, mixing both readings of what its theory was. In a reply brief, NREIS said it sought an injunction

- 19 -

based on REBA's advocacy of its theory in the litigation, the second reading.

The district court took up the second theory and enjoined REBA "from enforcing on NREIS its <u>interpretation</u> of the practice of law as encompassing (1) all the interconnected activities of a real estate conveyance and (2) the issuance of title insurance." <u>REBA I</u>, 609 F. Supp. 2d at 147 (emphasis added). The court held that NREIS "is entitled to a declaratory judgment that REBA's <u>interpretation</u> of the practice of law as encompassing all the interconnected steps of a real estate conveyance violates the Dormant Commerce Clause." <u>Id.</u> (emphasis added). The court said its "holding address[ed] the constitutionality of REBA's interpretation of what constitutes the unauthorized practice of law . . . , not the constitutionality of sections 46 and 46A themselves."[5] <u>Id.</u> at 147 n.91.

The district court thus held that REBA's actions in bringing a suit before a state court seeking an adjudication that certain activities violated a state statute were themselves a violation of the dormant Commerce Clause. More specifically, the

---

[5] Indeed, the court could not have ruled on the constitutionality of these provisions of state law because that would, in light of its holding that these provisions were inapplicable, have been an advisory opinion, forbidden by Article III. <u>Steir</u> v. <u>Girl Scouts of the USA</u>, 383 F.3d 7, 16 (1st Cir. 2004) ("A court cannot hear an action that loses 'its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law.'") (quoting <u>Hall</u> v. <u>Beals</u>, 396 U.S. 45, 48 (1969) (per curiam)).

- 20 -

court held that REBA's advocacy of the particular position in state court that NREIS's activities violated the state law was a violation of the dormant Commerce Clause.

After the court issued the injunction, REBA argued at the hearing on attorney's fees that there had been nothing to enjoin because the court had found no violation of the statute and so the issue of whether enforcement of the statute would violate the dormant Commerce Clause was not before the court. REBA also said there was nothing left for the court to "enjoin" given the court's ruling. REBA also argued it should not be enjoined for its advocacy in filing a lawsuit, nor should it be made to pay attorney's fees. The court rejected those arguments (and did so without explanation). REBA II, 642 F. Supp. at 64.

1. The District Court Erred as a Matter of Law in Affording Relief to NREIS

a. No § 1983 Claim Was Stated because REBA Is Not a State Actor

Unless REBA was a "state actor" there can be no § 1983 claim against REBA. Tomaiolo v. Mallinoff, 281 F.3d 1, 8 (1st Cir. 2002); Yeo v. Town of Lexington, 131 F.3d 241, 248-49 & n.3 (1st Cir. 1997). The § 1983 counterclaim posited that REBA, an otherwise private association, became a state actor by virtue of the role given it by § 46B. The district court agreed, holding that REBA, by bringing suit under § 46B and making the allegations it did, became a state actor because REBA had assumed a traditional

- 21 -

public function.  REBA I, 609 F. Supp. 2d at 144 n.67.  No other theory of state action was argued or considered.

The public function theory requires a plaintiff to "show more than the mere performance of a public function by a private entity."  Perkins v. Londonderry Basketball Club, 196 F.3d 13, 19 (1st Cir. 1999).  A plaintiff must show that "the private party performed a public function that has been 'traditionally the exclusive prerogative of the state,'" Estades-Negroni v. CPC Hosp. San Juan Capestrano, 412 F.3d 1, 5 (1st Cir. 2005) (quoting Blum v. Yaretsky, 457 U.S. 991, 1005 (1982)).  This is a demanding standard, and the plaintiff has the burden to meet it.  See Perkins, 196 F.3d at 19.

Here it is clear that NREIS failed to meet its burden.  And the district court's ruling, which involved no analysis of whether REBA's filing of a lawsuit and advocacy of a position in court was traditionally and exclusively reserved to the state, was in error.

Section 46B does not delegate to private actors functions that are traditionally "exclusively reserved to the State."  Id. (emphasis in original).  It does nothing more than grant bar associations, along with three or more members of the Massachusetts bar, the attorney general, and district attorneys, standing to bring suit enforcing the unauthorized-practice-of-law statute.  Mass. Gen. Laws ch. 221, § 46B.  An action undertaken by a private

- 22 -

party does not become state action merely because the action is authorized by state statute. Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 164-66 (1978) (holding that the defendant warehouseman's sale of goods pursuant to a statute authorizing self-help was not state action); Estades-Negroni, 412 F.3d at 6.

The Commonwealth, as a matter of policy, chose to give bar associations a defined role in bringing court actions to seek a judicial determination whether the challenged actions constitute the unauthorized practice of law. But that role was a limited one. Section 46B grants the bar association itself no power to make a determination as to whether the challenged activity is the unauthorized practice of law. REBA could not itself determine whether its interpretation was correct, nor could it enforce its interpretation. Thus, while defining what is the unauthorized practice of law is the exclusive function of state government, cf. Goldfarb, 421 U.S. at 792, that is not what is at issue here. See Lawline v. Am. Bar Ass'n, 956 F.2d 1378, 1384-85 (7th Cir. 1992) (holding that bar associations that formulated but could not decide unauthorized-practice-of-law rules were not state actors).

What is at issue--the bringing of a lawsuit to obtain a declaration as to legality--is far from an exclusive function of government. See Estades-Negroni, 412 F.3d at 8-9 (holding that parties that filed a court petition seeking the plaintiff's involuntary commitment did not thereby become state actors); cf.

Nowicki v. Ullsvik, 69 F.3d 1320, 1324 (7th Cir. 1995) (finding that an attorney's successful motion to exclude a paralegal from participating in judicial proceedings on unauthorized-practice-of-law grounds was not state action).

Further, § 46B specifically includes private entities and people as well as public officials. It does not by its terms make those private entities into public entities. REBA is not an integrated bar, nor is it a Massachusetts state agency. "That a private entity performs a function which serves the public does not make its acts state action." Rendell Baker v. Kohn, 457 U.S. 830, 842 (1982). Nor is there another statute giving REBA enforcement powers.[6] Statutes restricting standing do not thereby transform those granted standing into government actors.

REBA also could not be found a state actor under either the state-compulsion or joint-action tests. See Estades-Negroni, 412 F.3d at 4-5. Neither has been alleged. As to the state-compulsion test, there is no claim that the state "has exercised coercive power or has provided such significant encouragement,

---

[6] The parties apparently failed to call to the court's attention our decision in Werle v. Rhode Island Bar Association, 755 F.2d 195 (1st Cir. 1985). There, a Committee of the Bar Association sent a letter requesting that plaintiff cease and desist from the practice of law. Id. at 197. The district court held that this was insufficient to make the association a state actor. Id. This court held that even if the bar association were a state actor, the association would enjoy either absolute immunity like prosecutors or qualified immunity like government officials. Id. at 198.

either overt or covert, that the [challenged conduct] must in law be deemed to be that of the State."  Id. at 5 (quoting Blum, 457 U.S. at 1004) (internal quotation marks omitted) (alteration in original).

For similar reasons, REBA also could not be found a state actor under the joint-action test.  There is no claim that the state has "so far insinuated itself into a position of interdependence with [REBA] that it must be recognized as a joint participant in the challenged activity."  Perkins, 196 F.3d at 21 (quoting Burton v. Wilmington Parking Auth., 365 U.S. 715, 725 (1961)).  REBA is a private organization that operates independently of the state government and is not a state actor.

b.  No Dormant Commerce Clause Claim Was Stated

In addition, because REBA is not a state actor, but a private actor, REBA itself cannot have violated the dormant Commerce Clause.  The dormant Commerce Clause is addressed to actions by states.  Or. Waste Sys., Inc. v. Dep't of Envtl. Quality, 511 U.S. 93, 98 (1994) ("[T]he [Commerce] Clause has long been understood to have a 'negative' aspect that denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce."); Family Winemakers of Cal., 592 F.3d at 4 n.1.  For this reason as well, the dormant Commerce Clause claim based on REBA's filing of the lawsuit should have been dismissed.

c. <u>Our Precedent in </u>National Revenue Corp.<u> v. Violet</u><u> Does Not Establish a Dormant Commerce Clause Violation in This Case</u>

Finally, the district court incorrectly reasoned that its result was consistent with a 1986 decision of this court in <u>National Revenue Corp.</u> v. <u>Violet</u>, 807 F.2d 285 (1st Cir. 1986). In <u>Violet</u> there was a judicial determination that an unauthorized-practice-of-law statute applied to certain debt collection practices. <u>Id.</u> at 288. The issue was whether the statute, as interpreted and applied to the plaintiff, violated the Commerce Clause, as the plaintiff had asserted in defense. <u>Id.</u> A divided panel of this court held that such an application constituted a Commerce Clause violation. <u>Id.</u> at 290. This was an utterly conventional application of a Commerce Clause defense.

In this case there was no judicial determination that the statute applied to NREIS, only a nonfrivolous argument by REBA that it did, and REBA cannot be found to have acted unconstitutionally by making that argument.

2. <u>The Injunction Violated REBA's First Amendment Right to Petition</u>

There is an even more fundamental problem with the award of injunctive and declaratory relief based on REBA's having filed suit in state court. These awards undercut First Amendment protections given to the bringing of nonfrivolous lawsuits and

- 26 -

allegations made in court pleadings.[7]  Indeed, by its literal terms the injunction could be thought to enjoin REBA from taking this appeal.

The right to petition the courts for redress implicates the First Amendment right of free speech and right to petition the government.  See United Mine Workers of Am. v. Ill. State Bar Ass'n, 389 U.S. 217, 222 (1967);  NAACP v. Button, 371 U.S. 415, 429 (1965); Powell v. Alexander, 391 F.3d 1, 16-17 (1st Cir. 2004). These principles have long standing in our constitutional jurisprudence, and they include the right to file lawsuits that are not baseless.[8]  BE & K Constr. Co. v. NLRB, 536 U.S. 516, 524-26,

---

[7]   We do not consider whether, if REBA were a state actor, its filing of the lawsuit would be protected under the government speech doctrine. See Pleasant Grove City v. Summum, 129 S. Ct. 1125, 1131-32 (2009); Sutliffe v. Epping Sch. Dist., 584 F.3d 314, 329-30 (1st Cir. 2009).

[8]   Even public employees, who are subject to far more restrictions on their speech than private entities such as REBA, enjoy some protection against retaliation for speech on matters of public concern; albeit there are countervailing public interests. Garcetti v. Ceballos, 547 U.S. 410, 417-20 (2006); Connick v. Myers, 461 U.S. 138, 142 (1983); Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968); Curran v. Cousins, 509 F.3d 36, 44-45 (1st Cir. 2007).  As we said in Dixon v. International Brotherhood of Police Officers, 504 F.3d 73 (1st Cir. 2007),

The First Amendment protects an individual's right to petition the courts, but that right is not absolute.  For example, in the labor and antitrust contexts, "sham" suits can lead to civil liability if those suits "were both objectively baseless and subjectively motivated by an unlawful purpose."

Id. at 86 (quoting BE & K Constr. Co. v. NLRB, 536 U.S. 516, 531 (2002)) (internal citation omitted).

- 27 -

530-31 (2002); Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 56-61 (1993); Bill Johnson's Rests., Inc. v. NLRB, 461 U.S. 731, 743-44 (1983). As our certification of the question to the SJC demonstrates, REBA's bringing of the declaratory judgment action and its advocacy position were far from frivolous.

Nor is the claim against REBA based on a claimed violation of a federal statute, such as the Sherman Act;[9] it is based on the Constitution. This case does not involve statutory regulation of the activity of various market players, say, for example, of lawyers functioning as debt collectors. Heintz v. Jenkins, 514 U.S. 291, 293-94, 299 (1995) (holding that lawyers who regularly collect consumer debt through litigation may be considered "debt collectors" under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692o, and are therefore subject to liability for litigation activities); see also Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 130 S. Ct. 1605, 1609-11 (2010).

It is irrelevant to REBA's First Amendment protection that the district court ruled against REBA on the merits of REBA's claim that NREIS's activities were the unauthorized practice of

---

[9] By parallel, in light of First Amendment concerns, the Supreme Court has construed the Sherman Act to prohibit only lawsuits that are both objectively baseless and subjectively intended to abuse process. Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 60-61 (1993).

law.  This First Amendment protection exists whether or not REBA's nonfrivolous claims are ultimately found to be meritorious.  BE & K Constr. Co., 536 U.S. at 532.  As the Supreme Court has pointed out, even if reasonably based suits are ultimately unsuccessful, such suits nonetheless advance some First Amendment interests, including raising matters of public concern and allowing the advancement and development of legal theories.  Id. at 532.  The filing of such suits adds legitimacy to the court system as the designated forum to resolve disputes.  Id.

The district court's issuance of the injunction and declaratory relief transgressed those First Amendment principles.

3.    NREIS's Claim REBA Waived the Arguments that It Is Not a State Actor and that It Is Entitled to First Amendment Protections Fails

NREIS argues REBA has waived any argument as to its status as a state actor or its entitlement to First Amendment protection and that this court cannot, as a result, reach either issue.  It is true that REBA did not argue to the district court that it was not a state actor or that its actions in bringing suit and in advocating as it did were protected by the First Amendment. We have no need to address whether NREIS had some obligation to warn the court of the First Amendment hazards of its theory.  Had either side done so, the district court might, forewarned, have stayed its hand.

NREIS's pleadings were unclear, and it appears to have refocused its Commerce Clause theory from a conventional defense that enforcement of an applicable statute against it would violate the dormant Commerce Clause to a claim that the mere bringing of suit under §§ 46 and 46A alleging a violation was itself prohibited by the Commerce Clause. Because of the confusion caused by NREIS's pleadings and briefing, REBA's arguments did not address the theory on which the district court ultimately granted relief against it. For this reason alone, we decline to find waiver on the First Amendment argument.

Even if there were waiver, we would excuse it. It is a matter of discretion in this court whether to reach the issues. Montalvo v. Gonzalez-Amparo, 587 F.3d 43, 48 (1st Cir. 2009); Nat'l Ass'n of Social Workers v. Harwood, 69 F.3d 622, 627 (1st Cir. 1995); see also Aroostook Band of Micmacs v. Ryan, 484 F.3d 41, 51 n.11 (1st Cir. 2007) (exercising the court's discretion to reach an argument raised only in an amicus brief). In deciding whether to reach issues we have considered: whether the litigant's failure to raise the issue has deprived the court of appeals of useful factfinding, or whether the issue was of a purely legal nature; whether the argument was highly persuasive and failure to reach it would threaten a miscarriage of justice; whether considering the issue would cause prejudice or inequity to the adverse party; whether the failure to raise the issue was inadvertent and provided

no advantage; whether the issue was of constitutional magnitude; and whether the issue implicates a matter of great public concern. Montalvo, 587 F.3d at 48-49; Harwood, 69 F.3d at 627-28.

Both the state action and First Amendment issues satisfy our criteria. REBA gained no advantage in failing to raise these issues. REBA's failure to argue it was not a state actor before the district court and its effort to raise the issue on appeal did not deprive this court of any useful factfinding, nor does it prejudice NREIS. Harwood, 69 F.3d at 627-28.

As to the First Amendment issue, it is clearly one of "constitutional magnitude." Id. at 628. It is also an issue of great public concern, id., having significance to the administration of justice in the federal courts. No party bringing suit should fear that its nonfrivolous advocacy of a reasonable position in federal court will, on that basis alone, lead to an injunction and declaration against it based on the dormant Commerce Clause. Much less should a party be made, based on its conduct in bringing such a suit, to fear the imposition of attorney's fees. Further, this is a pure issue of law; no party is harmed by the absence of fact finding. Id. at 627-28. The law is quite clear and this court has received the benefit of briefing on the issue from NREIS and the amicus Boston Bar Association.

IV.

This brings us to the appropriate relief. We vacate the judgment of the district court entering judgment against REBA, reverse all relief awarded on the counterclaim and vacate the award of attorney's fees and costs.

We certify the questions specified below to the SJC:

1. Whether NREIS's activities, either in whole or in part, based on the record in this case and as described in the parties' filings, constitute the unauthorized practice of law in violation of Mass. Gen. Laws ch. 221, §§ 46 et seq.

2. Whether NREIS's activities, in contracting with Massachusetts attorneys to attend closings, violate Mass. Gen. Laws ch. 221, §§ 46 et seq.

We would welcome the advice of the SJC on any other relevant aspect of Massachusetts law which it believes would aid in the proper resolution of the issues.

The clerk of this court is directed to forward to the Massachusetts SJC, under the official seal of this court, a copy of the certified questions and our decision in this case, along with a copy of the briefs and appendix filed by the parties in the federal proceeding and the district court record, which set forth all facts relevant to the issues certified. We retain jurisdiction over REBA's claims pending the SJC's determination. The case shall be stayed until receipt of the response of the SJC.

Costs of this appeal are awarded to REBA.

_So ordered_.